*20 TEXTO COMPLETO DE LA SENTENCIA
El 19 de enero se refirió a este panel el recurso de epígrafe el cual se presentó ante este Tribunal el 27 de diciembre de 2004. El Estado Libre Asociado de Puerto Rico (E.L.A.) recurre de la sentencia dictada por el Tribunal de Primera Instancia que declaró con lugar la demanda de impugnación de confiscación presentada por los aquí apelados. En virtud de la misma, el Tribunal ordenó al ELA la devolución de determinados camiones y tanques confiscados a la Compañía aquí apelada. El ELA sostiene que el foro recurrido erró al concluir que Diversified Petroleum es un tercero inocente.
Con el beneficio de la transcripción del juicio, el escrito en oposición del apelado y la documentación presentada ante el foro de instancia, procedemos a resolver.
I
El 22 de julio de 2003 se presentaron varias denuncias contra los señores Carlos Alvarado Pérez, Juan Cordero Vega y Luis Nieves Vázquez por la alegada comisión del delito de apropiación ilegal agravada. Art. 166 del Código Penal, 33 L.P.R.A. sees. 4272. Se les imputó haberse apropiado, sin violencia ni intimidación, de bienes muebles consistentes de cientos de galones del combustible conocido como Kerosene, propiedad de la compañía Bristol Myers de Mayagüez. En esa misma fecha, el Tribunal de Primera Instancia hizo determinación de causa probable y fijó las fianzas correspondientes. Anejo I, Ap. Apel., págs. 1-14.
Ese mismo día, 22 de julio de 2003, el Secretario de Justicia expidió varias órdenes de confiscación contra los siguientes vehículos de motor: (1) Tanque 390, Fruehauf Corp. Trailer Color Gris, Año 1984, Tablilla 44683A, Núm. Registro 2503299, Marbete 2041441, Número de Serie 4T04120EK023602 a nombre de Reliable Petroleum Service Corp.; (2) Tanque 525, modelo Heil International Inc., 1980, Marbete 0073274, Tablilla 25082A, Número de Serie 1HLA1A6B0A7G51238, a nombre de Diversified Petroleum, Inc.; (3) Tanque 2001, Heil International, Inc., Año 1999, Tablilla 49025A, Núm. Registro 5504304, Número de Serie 5HTAB4038X7J63234, a nombre de Diversified Petroleum, Ind.; (4) Kenworth Motor Truck, Año 1998, Marbete 1185454, Tablilla 23023R, Número de Serie 1NK0L20X5WJ761902, a nombre de Diversified Petroleum Ind.; (5) vehículo Tablilla 27165R, a nombre de Heavy Parts, Inc.; y (6) vehículo Western Star 3800, serie AZ, marbete 1173913, Tablilla 26843R, número de serie 2WLPDDRL61K970715, a nombre de Reliable Petroleum Service *21 Corp., Anejo III, Ap. Apel. págs. 30-35.
Las referidas órdenes se expidieron en virtud de la facultad conferida por la Ley Núm. 93 de 13 de junio de 1988, mejor conocida como la Ley Uniforme de Confiscaciones, 34 LPRA sees. 1723 et. seq. Conforme se desprende de dichos documentos, la ocupación y confiscación de los vehículos era procedente, en vista de que éstos se utilizaron o estaban relacionados con la comisión del delito tipificado en el Artículo 166 de Código Penal de Puerto Rico, supra.
Luego de realizadas las ocupaciones correspondientes, la Junta de Confiscaciones le notificó sobre ese hecho a las personas o entidades que pudieran tener algún interés sobre los vehículos de motor en cuestión, entre ellos: Diversified Petroleum Ind.; Reliable Petroleum Services Corp.; G.E. Capital; CitiCapital; y Heavy Parts, Inc., Anejo IV, Ap. Apel., págs. 36-54. Se informó también el valor de los vehículos según se desprendía de las tasaciones requeridas por la Ley Uniforme de Confiscaciones.
El 19 de agosto de 2003, Associates International Holding Corp. h/n/c CitiCapital Puerto Rico presentó una demanda impugnando la confiscación (caso Civil Núm. ISCI200300226). Adujo tener un gravamen a su favor sobre el vehículo de Arrastre, marca Kenworth, Modelo W900, año 2003, tablilla 27165. Anejo V, Ap. Apel., págs. 55-66). Luego de que el ELA contestara la demanda (Anejo VI, Ap. Apel., págs. 67-68), Associates International presentó una moción solicitando desistimiento sin peijuicio. Anejo VIII, pág. 69. El Tribunal de Primera Instancia dictó sentencia a esos efectos el 8 de octubre de 2003, notificada el 5 de noviembre de 2003. Anejo VIH, Ap. Apel., págs. 70-71.
El 19 de agosto de 2003, Diversified Petroleum, Inc., Reliable Petroleum y el Sr. Antonio Cruz Domenech, presentaron ante el foro de Instancia, una Demanda sobre Impugnación de Confiscación contra el ELA y el Secretario de Justicia (Caso Civil Núm. ISCI200300228). Anejo IX, Ap. Apel., págs. 72-74. Alegaron ser los dueños de los vehículos de motor anteriormente mencionados y que las confiscaciones fueron “irrazonables, arbitrarias, caprichosas, injustas e ilegales”. Demanda, pág. 2; Ap. Apel., pág. 68. Fundamentaron su alegación en que ni las compañías, ni su presidente, Sr. Antonio Cruz Domenech, “tenían conocimiento ni dieron autorización para que sus empleados cometieran delitos... ”. Id. Específicamente se alegó lo siguiente:
“NOVENO: Que relacionado a los hechos criminales que dieron alegadamente base a la ocupación de las propiedades confiscadas, de conformidad a investigación realizada por el CIC solamente se acusó a los ex empleados de la parte demandante y no al Sr. Antonio Cruz Domenech, Presidente y Dueño de Diversified Petroleum, -Reliable Petroleum, quien no tenía conocimiento, ni había autorizado a sus empleados a que cometieran actos delictivos en sus propiedades durante las horas de trabajo. No existe vínculo entre los actos delictivos de los empleados del Sr. Antonio Cruz Domenech y este último. ” Ibid. (Enfasis suplido).
En virtud de lo anterior, los allí demandantes adujeron ser “terceros inocentes” en cuanto a los hechos que dieron origen a la ocupación y posterior confiscación de los referidos vehículos. Ibid. Además, impugnaron el valor adjudicado a los vehículos mediante tasación y alegaron que fueron notificados tardíamente de las ocupaciones.
En esa misma fecha, 19 de agosto de 2003, los allí demandantes y aquí apelados presentaron ante el foro de instancia una “Moción sobre Confiscación de Fianza”. Anejo X, Ap. Apel., págs. 75-76. Expusieron que junto a dicha moción estaban consignando la fianza número 100019965, otorgada por la Compañía Universal Insurance Company, por la cantidad de $358,000.00 por el importe de la tasación. A esos efectos, solicitaron la devolución de las propiedades confiscadas luego del cumplimiento de los trámites de rigor.
El 22 de agosto de 2004, G.E. Capital y Universal Insurance Company presentaron varias demandas sobre impugnación de confiscación contra el ELA, el Secretario de Justicia y el Superintendente de la Policía. (Casos *22 Civiles Núm.: ISCI200300255; ISCI200300256; ISCI200300257; ISCI200300258; ÍSCI200300259). Anejo XI; Ap. Apel., págs. 77-96. Dicha parte alegó que tenía interés en varios de los vehículos confiscados por tener contratos de venta condicional sobre ellos y que, además, Diversified Petroleum aún tenía balances pendientes de pago. El mismo día en que el ELA contestó las demandas (Anejo XII; Ap. Apel., págs. 97-106), solicitó la consolidación de dichos casos (Anejo XIII; Ap. Apel., págs. 107-108). El tribunal aprobó la consolidación mediante Orden de 1 de octubre de 2003. Anejo XIV, Ap. Apel., págs. 109-110. 
El 25 de agosto de 2003, notificada el 28 de agosto de 2004, el Tribunal de Primera Instancia dictó orden en la cual aprobó la fianza prestada por Diversified Petroleum en el caso Civil Núm. ISCI200300228 y le ordenó al ELA devolver los vehículos confiscados. Anejo XVI, Ap. Apel., págs. 115-117.
El 28 de agosto de 2003, Diversified Petroleum presentó una moción en solicitud de sentencia sumaria. Anejo XVII, Ap. Apel., págs. 118-120. En la misma expuso básicamente las mismas alegaciones y argumentos esbozados en su demanda, particularmente la defensa de tercero inocente.
El ELA contestó la demanda presentada por Diversified el 16 de septiembre de 2003. Anejo XVIII, Ap. Apel., págs. 121-122. Se aceptaron algunas alegaciones, se negaron otras y se levantaron varias defensas afirmativas.
En esa misma fecha, 16 de septiembre de 2003, el ELA solicitó la consolidación del pleito de epígrafe con los casos de G.E. Capital v. ELA, Civil Núm. ISCI200300255 al ISCI200300259, supra, por estar íntimamente relacionados en cuanto a las cuestiones de hechos y de derecho planteadas. Anejo XIX, Ap. Apel., págs. 123-125. El 18 de septiembre de 2003, el Tribunal de Primera Instancia dictó una orden en la cual declaró con lugar la solicitud de consolidación presentada por el ELA, Anejo XX, Ap. Apel., pág. 126. Dicha orden se notificó el 10 de octubre de 2003.
El 26 de septiembre de 2003, el ELA presentó su oposición a la solicitud de sentencia sumaria presentada por Diversified. Anejo XXI, Ap. Apel., págs. 127-176. Así las cosas, el 16 de octubre de 2003 se celebró una vista en la cual se discutió la moción de sentencia sumaria, así como la procedencia de la desestimación de los casos presentados por GE,. Capital. Anejo XXII, Ap. Apel., págs. 177-178.
Luego de varios trámites procesales, el foro recurrido dictó una resolución en la cual declaró sin lugar la moción de. sentencia sumaria presentada por la allí demandante y aquí apelada Diversified. Anejo XXXII, Ap. Apel., págs. 201-207. Por un lado, dicho foro resolvió que la notificación de las ocupaciones se hizo en tiempo. De otro lado, resolvió qué existía controversia de "hechos en cuanto a la aplicación de la defensa-de tercero inocente, por lo que. en ese momento no podía resolverse ese asunto mediante sentencia sumaria.
El juicio en su fondo quedó señalado para el 3 de junio de 2004. Antes de comenzar el juicio, el ELA informó que el Sr. Carlos Alvarado Pérez fue absuelto de los casos criminales que dieron origen al presente litigio. En vista de ello, el Tribunal recurrido dictó sentencia parcial el 7 de junio de 2004 en la cual declaró con lugar la demanda sobre impugnación de confiscación en cuanto al camión marca Western Star 3800, Serie AZ, Tablilla 26843R, número de serie 2WLPDDRL61K70715. Además, ordenó la devolución de la fianza prestada; más los intereses que ésta hubiese generado hasta el momento de la entrega. La referida sentencia se notificó el 8 de junio de 2004. Anejo XXXIII; Ap. Apel., págs. 208-209.
Luego de celebrada la vista en su fondo, esto es, el 9 de junio de 2004, el Tribunal de Primera Instancia dictó otra Sentencia en la cual declaró con lugar una solicitud de desistimiento presentada por G.E. Capital. Anejo XXXIV, Ap. Apel., págs. 210-211. A esos efectos, dicho foro ordenó el archivo y sobreseimiento de los Casos Civiles Núm. ISCI200300255 al ISCI200300259, los cuales fueron consolidados con el caso de epígrafe, ISCI200300228. Anejo XXXV; Ap. Apel., págs. 212-213.
*23 Así las cosas, y luego de atendida la prueba presentada durante el juicio del caso de epígrafe, el Tribunal de Primera Instancia dictó sentencia el 20 de septiembre de 2004. Anejo XXXVI; Ap. Apel., págs. 214-220. Durante dicho juicio, las partes estipularon cierta prueba documental y ciertos hechos. La prueba testifical consistió del testimonio del co-demandante Antonio Cruz Domenech, Presidente de Diversified Petroleum. 
Las determinaciones de hechos del foro a quo fueron las siguientes:

“1. Diversified Petroleum es una compañía que desde el 1990 hasta el presente se dedicaba [sic] al manejo y venta de combustible de petróleo en Puerto Rico.

2. El Sr. Antonio Cruz es el presidente y dueño de dicha compañía.

3. El 25 de julio, la prensa del país reseñó que una organización criminal dedicada a robar y a revender combustible había sido desarticulada luego de una investigación realizada por la Policía.

4. Como resultado de dicha investigación, el 23 de julio de 2003 fueron arrestados los camioneros (choferes) Juan A. Cordero, Luis Nieves y Carlos Alvarado.

5. Al momento del arresto, éstos eran empleados de Diversified Petroleum.

6. El 24 de julio de 2003, la parte demandada confiscó tres camiones y tres tanques propiedad de Diversified Petroleum.

7. El 31 de julio de 2003, los camioneros fueron despedidos por el robo de combustibles.

8. El 8 de agosto de 2003, le fue notificada a la parte demandante por correo con acuse de recibo dicha confiscación, la cual fue recibida el 11 de agosto. La notificación fue realizada en tiempo.

9. El Sr. Antonio Cruz Domenech nunca fue acusado ni estuvo involucrado con el esquema fraudulento. Por el contrario, éste cooperó con el Estado siendo testigo de la Fiscalía en el caso contra sus empleados.

10. El Sr. Carlos Alvarado fue el único que resultó absuelto. 

11. El 9 de agosto se presentó en tiempo la demanda de epígrafe.

12. Diversified Petroleum, como requisito para el empleado [sic] de choferes, [sic] requiere que los candidatos presenten certificación de récord penal y además tienen que tomar los cursos de entrenamiento para el manejo de productos peligrosos.

13. Además, como medida cautelar, la compañía exige a los choferes [sic] exámenes de sustancias controladas.

14. Previo los arrestos efectuados el 24 de julio de 2003, el Sr. Domenech ya había despido [sic] al Sr. Omar León, quien también fue arrestado por la Policía, por haber sustraído combustible de uno de los camiones de Diversified Petroleum sin autorización del Sr. Domenech. Así también despidió a otro empleado que sustrajo también combustible ilegalmente.

15. En todo momento, la compañía Diversified Petroleum ha respondido a sus clientes por el hurto de combustible.

*24
16. Como medida de seguridad, la compañía a [sic] colocado en los camiones unos rótulos que tienen los teléfonos de la compañía para que la ciudadanía pueda informar al patrono cualquier incidente como por ejemplo; si el camión está siendo manejado en exceso de velocidad. Al recibir una llamada, el patrono comienza a investigar.

17. El Sr. Cruz Domenech no fue notificado por la Policía de la investigación que se estaba llevando a cabo, y no tuvo sospecha alguna de los choferes [sic] que fueron arrestados.

18. El Sr. Cruz Domenech conoció de la situación de robo el día 24 de julio de 2003 en horas tempranas de la mañana.

19. Los tanques mayormente permanecen en un solar ubicado en Cataño.

20. Las entradas y salidas son monitoreadas por el Sr. Domenech por teléfono.

21. El Sr. Antonio Cruz Domenech, como medida preventiva, escoge choferes [sic] al azar para ser observados en su tarea, y para ello contrata un investigador privado o lo realiza él personalmente. ” Sentencia apelada, págs. 2-4; Ap. Apel., págs. 216-218. (Énfasis suplido).
A la luz de las anteriores determinaciones de hechos, el tribunal concluyó, como cuestión de derecho, que a los demandantes les cobijaba la doctrina del “tercero inocente” en materia de confiscaciones. Según expuesto por dicho foro, esa doctrina busca proteger los derechos de aquéllos que tienen un interés económico o propietario en el bien confiscado, pero que no se involucraron directamente en la actividad criminal que motivó la confiscación.
Al aplicar dicha doctrina al caso de autos, el foro de primera instancia concluyó que los demandantes no estuvieron directamente involucrados en la actividad delictiva que motivó la confiscación, además de que tomaron medidas cautelares expresas para precaver el uso ilegal de los vehículos. Ante ello, el foro sentenciador declaró con lugar la demanda y en consecuencia ordenó la devolución de los vehículos confiscados o, en su defecto, la cancelación de la fianza prestada. La sentencia se notificó el 11 de octubre de 2004.
El 18 de octubre de 2004, el ELA presentó ante el Tribunal de Primera Instancia una “Moción Solicitando Reconsideración, Determinaciones de Hechos y Conclusiones de Derecho Adicionales al Amparo de las Reglas 43.3 y 47 de Procedimiento Civil de Puerto Rico.” Anejo XXXVIII, Ap. Apel., págs. 223-226.
En síntesis, el ELA solicitó que se incluyera como parte de las determinaciones de hechos que el allí co-demandante, Sr. Antonio Cruz Domenech, despidió al co-acusado convicto Ornar León Cabello por incurrir en hurto de combustible utilizando camiones y tanques propiedad del allí demandante. Señaló el ELA que, aun cuando la determmácion dé hecho' número catorce (14) menciona ese incidente, omite detallar que el Sr. León Cabello fue uno de los involucrados convictos por hurto de combustible a la compañía Bristol Myers en los hechos que provocaron la ocupación y confiscación de la propiedad en cuestión el 24 de julio de 2003. En cuanto a este aspecto, el ELA señaló que debía incluirse esa determinación de hecho, “ya que en la empresa criminal no sólo estaban envueltos empleados del demandante, sino también este ex-empleado (León Cabello) que fue despedido por el demandante previamente a los hechos que provocaron la confiscación.” Id., pág. 1; Ap. Apel., pág. 223.
Además, el ELA solicitó mediante la referida moción que se incluyera como determinación de hecho que “durante el testimonio del demandante no surge que luego de haber despedido a Ornar León Cabello haya dado instrucciones expresas y específicas ni por escrito ni verbalmente a sus empleados para evitar el robo de combustible utilizando su propiedadIbid., pág. 2, Ap. Apel., pág. 224. (Énfasis suplido).
*25 Por último, el ELA le planteó al foro aquí recurrido que las supuestas medidas cautelares tomadas por la parte allí demandante nunca cumplieron con el propósito de evitar el uso ilegal de la propiedad, por lo que no le es aplicable a dicha parte la doctrina del “tercero inocente”.
El 20 de octubre de 2004, el foro recurrido denegó la reconsideración y determinaciones de hechos y conclusiones de derecho adicionales presentada por el ELA. Dicha decisión se notificó el 26 de octubre de 2004. Anejo XXXIX, Ap. Apel., págs. 227.
El 1 de noviembre de 2004, la representación legal de la demandante-apelada, Diversified, presentó ante el Tribunal de Primera Instancia una moción de renuncia de representación legal. Anejo XL, Ap. Apel., págs. 229-230. El 17 de noviembre de 2004, notificada el 23 de noviembre de 2004, el foro de primera instancia denegó esa petición. Anejo XLI, Ap. Apel., págs. 231-232.
Inconforme, el ELA acude ante nosotros mediante el recurso que nos ocupa. Su señalamiento de error es, específicamente, el siguiente:

“Erró el Tribunal de Primera Instancia al resolver que la parte demandante es un tercero inocente para los efectos de las confiscaciones realizadas, a pesar de que no se demostró que dicha parte tomara medidas cautelares expresas y efectivas para evitar la comisión de actividad delictiva con sus tanques y camiones, aun cuando conocía que dos de sus empleados ya habían incurrido en la misma conducta delictiva aquí en cuestión. ”

Examinemos su reclamo a la luz del estado de derecho vigente.
II
a. La naturaleza de la acción de confiscación
La confiscación se define como “el acto de ocupación y de investirse para sí, que realiza el Estado por mandato legislativo y actuación dél ejecutivo, de todo derecho de propiedad sobre cualesquiera bienes, que hayan sido utilizados en relación con la comisión de delitos”. Cooperativa de Seguros Múltiples v. ELA, Opinión de 20 de marzo de 2003, 2003 J.T.S. 43.
A diferencia de la confiscación criminal, en nuestra jurisdicción, la confiscación es un procedimiento civil que busca la ocupación de la cosa, con independencia del resultado en el proceso criminal contra el autor del delito. Suárez Morales v. E.L.A., Opinión de 28 de mayo de 2004, 2004 J.T.S. 89.
Por ello, se entiende que la confiscación de carácter civil o in rem va dirigida contra la cosa misma y no contra el dueño de la propiedad, su poseedor, encargado, o cualquier otra persona con algún interés sobre ésta. Negrón Placer v. Secretario de Justicia, Opinión de 2 de mayo de 2001, 200T J.T.S. 66; Del Toro Lugo v. E.L. A., 136 D.P.R. 973 (1996). El propósito de esta acción es evitar que el vehículo o el artículo confiscado pueda utilizarse nuevamente en la comisión de delitos, y sirve como castigo adicional para disuadir a los criminales. General Accidente Co. v. E.L.A., 137 D.P.R. 466 (1994).
A esos efectos, el Artículo 2 de la Ley Uniforme de Confiscaciones, según enmendada, 34 L.P.R.A., see. 1723(a), establece que estará sujeta a confiscación toda propiedad que sea utilizada en relación a, o sea el resultado o producto de la comisión de delitos graves y de aquellos delitos menos graves en que por ley se autorice la confiscación, cuando tales delitos graves o menos graves estén tipificados en el Código Penal de Puerto Rico, o en otras leyes especiales específicamente mencionadas en el estatuto.
De igual forma, el Artículo 3 de la Ley Uniforme de Confiscaciones, 34 L.P.R.A. sec. 1723a, establece que *26 procede la ocupación de la propiedad sujeta a confiscación mediante orden de un magistrado o tribunal competente, o sin previa orden judicial cuando, entre otros, la propiedad a ocuparse haya sido utilizada con relación a la comisión de cualquiera de los delitos que se expresan en el Artículo 2 antes mencionado.
Como vemos, la legislación puertorriqueña establece la confiscación como un mecanismo eficaz para combatir el crimen. Este diseño legislativo se ha justificado sobre la base de que la confiscación del instrumento del crimen es uno importante para apoyar la lucha de las autoridades gubernamentales contra la actividad delictiva. Alverne Corporation v. Hon. Secretario de Justicia, Opinión de conformidad emitida por el Juez Asociado señor Fuster Berlingeri en Sentencia de 18 de junio de 1992, 130 D.P.R. 760 (1992).
De otra parte, cuando el Estado confisca un bien por considerar que se utilizó en la comisión de un delito grave o menos grave, la Ley Uniforme de Confiscaciones establece en su Artículo 8 un procedimiento a través del cual las partes afectadas pueden impugnar la confiscación mediante la presentación de una demanda contra el Estado. 34 L.P.R.A. sec. 1723f. De esa forma, la propia ley le brinda a las partes afectadas la oportunidad de levantar y probar las defensas válidas que puedan tener, en contra de la confiscación efectuada. Negrón Placer v. Secretario de Justicia, supra.
b. La defensa del “tercero inocente”
Al considerar las circunstancias que operarán como una excepción a la norma general de que las propiedades utilizadas para fines delictivos se encuentran sujetas a confiscación, nuestro Tribunal Supremo ha sido sumamente cauteloso en sus expresiones. Así pues, en Carlo v. Secretario de Justicia, 107 D.P.R. 356, 365 (1978), el más alto foro hizo la siguiente advertencia:
“El diseño legislativo prevaleciente en Puerto Rico... mantiene una distancia y una separación de campos entre la conducta del poseedor de la propiedad utilizada en la empresa criminal y el interés del dueño inocente, y una concentración en la cosa o instrumento del crimen en sí como objetivo abstracto del decomiso, indispensables para proteger la seguridad y el bienestar del pueblo contra el crimen y el fraude. La vinculación de procedimientos y la introducción del interés particular del dueño inocente en contraposición al legítimo interés de orden público al que sirve la confiscación, es rara excepción... ”. (Enfasis suplido y citas omitidas).
Cónsono con esa normativa, el Tribunal Supremo resolvió el caso de ELA v. Tribunal Superior, 94 D.P.R. 717 (1967). Allí se trataba de un vehículo perteneciente al E.L.A., el cual estaba cedido mediante arrendamiento al señor Ortiz, dueño de una panadería. A su vez, el vehículo era utilizado constantemente por el señor Rodríguez, empleado del señor Ortiz, quien se dedicaba a repartir el pan por varios pueblos de la Isla. En una ocasión, mientras el señor Rodríguez estaba en la ruta para repartir el pan, la Policía advino en conocimiento de que éste transportaba en el vehículo material relacionado al juego ilegal de bolita. Por esos hechos, el vehículo fue confiscado. Al rechazar la aplicación de la defensa del tercero inocente presentada por el arrendatario del vehículo, el Tribunal Supremo expresó:
“El infractor Rodríguez era un agente o empleado del arrendatario del vehículo confiscado. Cometió los actos delictivos mientras conducía el vehículo para vender pan en Orocovis y Villalba. El lugar donde cometió el delito estaba en su ruta. La posesión del vehículo por Rodríguez estaba en ese momento autorizada por el arrendatario del mismo. No hay base para concluir que Rodríguez había cometido el delito de hurto de uso del vehículo en el momento de infringir la Ley de la Bolita. Tampoco protege al tercero el hecho de que Ortiz hubiera prohibido a Rodríguez usar el vehículo para otros fines ni el hecho de que ignorara que Rodríguez usaba el vehículo en relación con el juego prohibido de la Bolita, ya que el uso no autorizado de un vehículo no protege el dueño del vehículo.” Metro Taxicabs v. Tesorero, 73 D.P.R. 171 (1952). Id., pág. 722. (Énfasis suplido).
*27 Nótese que la doctrina bajo la cual se resolvió ese caso es la que postula que el procedimiento de confiscación va dirigido contra el vehículo mismo y no contra sus dueños, por lo que si éstos entregaron voluntariamente la posesión del vehículo al infractor, correrán la suerte del uso a que el poseedor pueda someter el vehículo. Ibid.., pág. 721.
No obstante lo anterior, se han reconocido circunstancias especiales en las cuales el Tribunal Supremo le ha reconocido protección al “dueño o tercero inocente”. Por ejemplo, en Ochoteco v. Tribunal Superior, 88 D.P.R. 517, se resolvió que no procede la confiscación cuando un empleado comete un delito mediante la utilización de un vehículo propiedad de su patrono, siempre y cuando este último le hubiese dado a su empleado instrucciones expresas sobre el uso del vehículo, y a pesar de ello, el empleado se aparta de dichas instrucciones.
Con posterioridad a Ochoteco v. Tribunal Superior, id, el Tribunal Supremo aclaró en varias ocasiones que “para que pueda estimarse que el dueño del vehículo es un tercero inocente protegido de la confiscación, la conducta del conductor debe dar margen a una apreciación de que éste incurrió en lo que antes nuestro Código Penal tipificaba como el delito de ‘hurto de uso’”. Alveme Corp. v. Secretario de Justicia, supra; Meléndez v. Tribunal Superior, 90 D.P.R. 656, 678-679 (1964).
Precisamente, en el caso de Alverne Corp. v. Secretario de Justicia, supra, el Tribunal Supremo se enfrentó a una situación de hechos similar a la de Ochoteco v. Tribunal Superior, supra. En dicho caso, un empleado de una compañía de transporte terrestre fue instruido por su patrono para transportar una carga desde Carolina hasta la Base Roosevelt Roads en Ceiba. No obstante las instrucciones brindadas, el empleado se desvió de la ruta señalada y fue sorprendido por la Policía mientras realizaba unas transacciones en violación de la Ley de Sustancias Controladas. Aun cuando el Tribunal Supremo no emitió una Opinión, dicho foro dictó una Sentencia en la que resolvió que la confiscación efectuada era improcedente, en vista de que la empresa propietaria del vehículo de motor era un tercero inocente, “al cual no le eran imputables los hechos delictivos cometidos por el conductor del vehículo y que dieron lugar a la confiscación”. Alverne Corp. v. Secretario de Justicia, supra, pág. 761.
En una Opinión de Conformidad emitida por el Juez Fuster Berlingeri, a la cual se unieron el entonces Juez Presidente señor Andréu García y el Ex Juez Asociado señor Alonso Alonso, se nos explica que el problema se reduce en cada caso a determinar si el empleado se apartó de las instrucciones brindadas por su patrono, a tal extremo que la válida posesión original del vehículo se convirtió en ilegal. Conforme se expusiera en esta Opinión de Conformidad, ese fue el criterio utilizado al resolverse los casos de Ochoteco v. Tribunal Superior, supra, y E.L.A. v. Tribunal Superior, supra. Por un lado, en Ochoteco, el empleado recibió unas instrucciones expresas de su patrono, pero las desobedeció flagrantemente, por lo que la posesión del vehículo se convirtió en ilegal. Sin embargo, en E.L.A. v. Tribunal Superior, la desobediencia del empleado fue más bien “incidental”, ya que “mientras conducía el vehículo dentro de la ruta asignada y en las tareas que se le habían encomendado; el empleado aprovechó para incurrir en el juego de la bolita." Alverne Corp. v. Secretario de Justicia, supra, pág. 765. Por lo tanto, dichas decisiones no son incompatibles, sino “distinguibles”. Id.
Dos años después, en General Accident Ins. Co. v. E.L.A., 137 D.P.R. 466 (1994), el Tribunal Supremo se enfrentó al planteamiento de varias entidades financieras y sus respectivas compañías aseguradoras, en el sentido de que eran terceros inocentes ajenos a las actividades delictivas que provocaron las confiscaciones de vehículos sobre los cuales tenían intereses propietarios. Al rechazar ese argumento, el Tribunal Supremo sostuvo, a la pág. 474, que “[e]l carácter de ‘tercero inocente’ sólo depende de la naturaleza de la posesión o uso del vehículo por el infractor”. Es decir, que:
“Si éste no obtuvo la posesión del vehículo de manera involuntaria o si se apartó sustancialmente de las medidas cautelares o las instrucciones particulares expresas de quien le entregó dicha posesión, de modo que *28 incurrió en conducta constitutiva de lo que antes se tipificaba como hurto de uso, Ochoteco v. Tribunal Superior, supra, entonces; y sólo entonces, tanto el dueño del vehículo como el vendedor condicional o cualquier otro con interés en éste son “terceros inocentes”, protegidos contra la confiscaciónId. (Énfasis suplido).
De hecho, es al dueño del vehículo a quien le corresponde el peso de la prueba para demostrar que “no ha puesto la propiedad en posesión del supuesto infractor de manera voluntaria o me tomó las medidas cautelares expresas vara prevenir el uso ilesal de la propiedad en la comisión de un delito. o de que es un tercero inocente, si es necesario”. Del Toro Lugo v. E.L.A., 136 D.P.R. 873, 994 (1994). (Énfasis suplido). Así pues, (p]ara reconocer la condición de “dueño inocente” y anular la confiscación, no basta una mera alegación de inocencia; es menester probar las dilisencias reales hechas vara evitar el uso ilícito del automóvil”. Id.; Opinión Concurrente y Disidente del señor Negrón García, pág. 1016. (Énfasis suplido).
Recientemente, el Tribunal Supremo se reafirmó en la norma reconocida de que “si el dueño, poseedor o encargado del vehículo, o la persona con interés legal sobre éste, ha puesto, de forma voluntaria, dicho vehículo en posesión del infractor o de la persona bajo la cual éste actúa, los derechos de aquéllos corren la suerte del uso a que el infractor pueda someter el vehículo”. First Bank v. E.L.A.; Secretario de Justicia, Opinión de 17 de enero de 2002, 2002 J.T.S. 16. (Énfasis suplido). Véase además, General Accident Insurance Co. v. E.L.A., supra, pág. 71; E.L.A. v. Tribunal Superior; supra, pág. 721; Metro Taxi Cabs v. Tesorero, 73 D.P.R. 171 (1952). En ese sentido, la aplicación de los estatutos confiscatorios a los dueños de vehículos propicia que éstos ejerzan mayor cuidado al transferir la posesión de su propiedad. General Accident Insurance Co. v. E.L.A., supra, pág. 476, citando a Calero Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663 (1974).
Como hemos visto, el hecho de que el dueño de un vehículo de motor, que cede voluntariamente su posesión, no tenga conocimiento de que éste se utilizará para cometer actividades delictivas, no es un elemento decisivo en el análisis de si el dueño es un “tercero inocente ” o no. De hecho, el Tribunal Supremo ha resuelto específicamente que si se asimilaran los criterios de intención criminal cuando se trata de terceros, se concedería “una inmunidad franca a los ofensores de la ley que a través de una hábil estratagema estarían en condiciones de violarla empleando vehículos ajenos sin el riesgo de la confiscación”. E.L.A. v. Tribunal Superior, 94 D.P.R. 717, 121 (1967),
A1 aplicar la normativa antes expuesta al caso que nos ocupa, entendemos que la prueba desfilada no demostró las circunstancias especiales requeridas por la jurisprudencia para declarar a una persona como “tercero inocente”. Veamos porqué.
III
Es un hecho incontrovertido que dos de los empleados de Diversified, Juan Cordero Vega y Luis Nieves Vázquez, utilizaron varios tanques y camiones propiedad de ésta para apropiarse de combustible perteneciente a la compañía Bristol Myers. Como bien expone el Tribunal de Primera Instancia, dichos choferes estaban supuestos a entregar toda la mercancía a los clientes asignados, pero en el caso de Bristol Myers, no lo hicieron. Véase Sentencia Apelada, pág. 6; Ap. Apel., pág. 209.
No obstante lo anterior, el Tribunal de Primera Instancia resolvió, incorrectamente, que el mero hecho de que el Presidente de Diversified no estuviera involucrado en las actividades criminales en cuestión, lo convierte en un “tercero inocente” exento de la confiscación de su propiedad.
Sobre este particular, es imprescindible destacar que si bien es cierto que el Sr. Antonio Domenech no participó en la actividad delictiva, ello por sí sólo no lo convierte en un tercero inocente. De las propias determinaciones del foro a quo no se desprende que Diversified o su Presidente, el Sr. Domenech, hubiesen demostrado con preponderancia de la prueba la utilización de mecanismos expresos para precaver y evitar el *29 uso ilegal de sus tanques y camiones por parte de los empleados que resultaron convictos. Por lo tanto, asumieron el riesgo resultante de la utilización ilegal de la referida propiedad, de la cual ellos voluntariamente entregaron la posesión a los empleados convictos.
De hecho, durante el juicio en su fondo, el Sr. Domenech declaró que previo a los arrestos realizados el 24 de julo de 2003, él había despedido al Sr. Ornar León, quien también había sido arrestado por sustraer combustible de uno de los camiones de Diversified. Determinación de Hechos Núm. 14 de la Sentencia Apelada, pág. 3; Ap. Apel., pág. 206. De igual forma, se determinó que un segundo empleado fue despedido por sustraer combustible ilegalmente. Id. No obstante, del testimonio vertido por el Sr. Domenech no se desprende que luego de despedir al Sr. Ornar León o al otro empleado al que el tribunal hace referencia, Diversified le hubiese dado instrucciones expresas a los restantes empleados, ya fuera verbalmente o por escrito, para evitar el robo de combustible mediante la utilización de los camiones o tanques de Diversified.
La mera actuación de despedir al Sr. Ornar León Cabello tampoco tuvo el efecto de eliminar la susodicha práctica ilegal, en vista de que dicha persona, aun cuando fue despedida, resultó ser una de las personas convictas por hechos relacionados a la apropiación ilegal del combustible de Bristol Myers, hechos que provocaron la ocupación y confiscación de los vehículos aquí en controversia.
Por otro lado, el foro recurrido interpretó que ciertas actuaciones de Diversified constituyen las medidas cautelares requeridas por la jurisprudencia para declarar a una persona como un “tercero inocente”. En particular, dicho foro le dio especial importancia al hecho de que Diversified requiere certificados de récord penal como requisito para el empleo de sus choferes. Esa actuación no constituye una medida cautelar que estuviera específicamente dirigida a evitar la utilización de los vehículos para fines ilícitos. Ese acto más bien constituye un requisito a considerar a la hora de escoger un chofer, no una garantía de que éste no incurrirá en actividad delictiva mediante la utilización de la propiedad del patrono. Prueba de ello es que los choferes en cuestión, a pesar de habérsele requerido un certificado de antecedentes penales, incurrieron en actividad delictiva.
De igual forma, el hecho de que Diversified le ofrezca a sus choferes cursos de entrenamiento para el manejo de productos peligrosos, tampoco representa una medida cautelar del patrono para evitar la futura comisión de actividad delictiva mediante la utilización de su propiedad. Dichos cursos de entrenamiento no son otra cosa que un requisito para que los choferes operen correctamente, en vista de que éstos transportan combustible por las carreteras del país, y para ello es necesario conocer las técnicas o instrucciones para manejar material flamable o peligroso.
Por otro lado, el número de teléfono en los camiones para que los ciudadanos denuncien “cualquier incidente”, como por ejemplo, el manejo a alta velocidad, tampoco busca evitar que los camiones y tanques de la demandante Diversified fueran utilizados para cometer delito. Véase Sentencia Apelada, pág. 4, Determinación de Hechos Núm. 16; Ap. Apel., pág. 207. Tan es así que de las determinaciones de hechos del Tribunal de Primera Instancia no se desprende que la existencia de esos teléfonos hubiese sido un mecanismo diseñado para evitar o prevenir actividad delictiva. De hecho, el codemandante-apelado, Sr. Gruz Domenech, no advino en conocimiento de la actividad delictiva a través de esos números telefónicos, sino hasta el 24 de julio de 2003, es decir, dos días después de la radicación de las denuncias y el mismo día en que se realizaron las confiscaciones. Véase, Determinaciones de Hechos Núm. 6 y 18 de la Sentencia apelada, págs. 3-4; Ap. Apel., págs. 206 y 207.
Lo que sí se desprende de las determinaciones de hechos en cuanto a esos números telefónicos es que Diversified sólo comenzaba a investigar después de recibir una llamada a través de los mismos. Id. Más que una medida preventiva, la misma es una medida remedial, luego de que se ha dado cualquier acontecimiento, ya *30 sea el manejo de los vehículos a alta velocidad o de cualquiera otra naturaleza. Por lo tanto, la colocación de ese número de teléfono en los camiones de forma alguna puede considerarse como una “diligencia real” para evitar o prevenir el uso ilícito de los vehículos, según lo requerido por la jurisprudencia, Del Toro Lugo v. E.L.A., supra.
Igual situación ocurre con el monitoreo telefónico realizado por el señor Domenech de las entradas y salidas de los camiones. De forma alguna se demostró que el referido monitoreo, limitado a las entradas y salidas de los camiones, constituyera un mecanismo preventivo a la utilización de los mismos para fines ilegales. De hecho, ese monitoreo ni siquiera le ayudó al Sr. Cruz Domenech a sospechar que dos (2) de sus empleados estaban cometiendo delito. Tómese en consideración que el Sr. Cruz Domenech no se enteró “de la situación de robo” sino hasta el 24 de julio de 2003, fecha en que se realizaron las confiscaciones. Véase Determinaciones de Hechos Núm. 6 y 18 de la Sentencia apelada, págs. 3-4; Ap. Apel., págs. 206 y 207.
Por último, el hecho de que el Sr. Cruz Domenech escogiera choferes “al azar” y observarlos mientras trabajan, tampoco debe considerarse como una medida de tipo preventivo o una diligencia real para evitar el uso ilegal de los camiones. Ese mecanismo parece más bien dirigido a evaluar la eficiencia y destrezas del empleado y no a la prevención de conducta delictiva. De hecho, la utilización de ese mecanismo, meramente al azar, tampoco constituyó un disuasivo en este caso o una medida efectiva para que dos empleados cometieran actividad delictiva mediante la utilización de la propiedad del patrono.
Diversified no demostró que tomó medidas particulares para evitar que su personal incurriera en conducta delictiva mediante la utilización de su propiedad. Más aún, de las determinaciones de hechos del Tribunal de Instancia surge que dos empleados fueron despedidos por apropiarse ilegalmente de bienes muebles a través de la utilización de propiedad perteneciente a Diversified. Ello, no obstante, dicha empresa nada hizo para corregir la situación y evitar que se repitiera.
La prueba desfilada en este caso no demostró que Diversified brindara instrucciones expresas a sus empleados, ya fuera por escrito o verbalmente, para evitar la apropiación ilegal de combustible mediante el uso de su propiedad. Ello, a pesar de que dos empleados fueron despedidos anteriormente por esa misma conducta. Las medidas que tomó Diversified no configuran las “diligencias reales” requeridas por la jurisprudencia para eximir a los dueños inocentes de los efectos adversos de una confiscación. Al entregarle voluntariamente a sus empleados la posesión de los tanques y camiones, y ante la inexistencia de medidas cautelares o instrucciones específicamente dirigidas a evitar actividades delictivas mediante la utilización de éstos, Diversified corrió la suerte del uso al cual sus empleados sometieron los referidos vehículos.
En consideración a lo expuesto, se revoca la sentencia recurrida.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones