466

General Accident Insurance Co., demandante y recurrida, *v.* Estado Libre Asociado de Puerto Rico, demandado y recurrente; Scotiabank de Puerto Rico, demandante y recurrido, *v.* Estado Libre Asociado de Puerto Rico, demandado y recurrente; Ponce Federal Bank, demandante y recurrido, *v.* Estado Libre Asociado de Puerto Rico, demandado y recurrente; Banco Popular de Puerto Rico, demandante y recurrido, *v.* Estado Libre Asociado de Puerto Rico, demandado y recurrente.

*Números:* CE-94-89 CE-94-328 CE-94-329 CE-94-337

*Resueltos:* 22 de noviembre de 1994

*Pedro A. Delgado Hernández, Procurador General*, y *Héctor Clemente Delgado, Procurador General Auxiliar*, abogados del Estado Libre Asociado de Puerto Rico, recurrente; *José L. Delgado Cadilla*, de *Castro & Delgado Cadilla*, abogado de General Accident Insurance Co., recurrida; *Joseph Lo Presti Torres*, abogado del Scotiabank de Puerto Rico, recurrido; *Ángel L. Nieves Atienza,* abogado del Ponce Federal Bank y del Banco Popular de Puerto Rico, recurridos.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Tenemos ante nos la oportunidad de reiterar las normas jurídicas que determinan si una institución bancaria o co-

mercial, que provee financiamiento para un vehículo de motor que luego es confiscado por estar relacionado con una actividad delictiva, y la compañía aseguradora de la institución que financió dicho vehículo, son terceros inocentes o no bajo la Ley Uniforme de Confiscaciones de 1988, Ley Núm. 93 de 13 de julio de 1988, según enmendada, 34 L.P.R.A. sec. 1723 *et seq.* La multiplicidad de casos recientes ante distintos tribunales del país, en los cuales la cuestión referida ha sido erróneamente dilucidada, amerita nuestra opinión para esclarecer el estado de derecho.

## I

Los casos del epígrafe tratan situaciones de hecho y partes distintas. El trámite procesal de cada uno fue diferente; no obstante, los hemos consolidado ya que, en esencia, presentan la misma controversia.

En estos casos, distintas entidades financieras y sus respectivas compañías aseguradoras presentaron varias acciones separadas contra el Estado Libre Asociado de Puerto Rico (en adelante E.L.A.) ante diferentes foros judiciales para impugnar la confiscación de vehículos de motor cuya compra había sido financiada por dichas entidades bajo contratos de venta condicional. En estas acciones, las entidades financieras demandantes y sus compañías aseguradoras, aquí recurridas, alegaron en síntesis ser terceros inocentes, ajenos a los actos delictivos que dieron lugar a la confiscación de los vehículos. En consecuencia, reclamaron que se les devolviera los vehículos o, en la alternativa, que el E.L.A. pagase el monto de su gravamen sobre los vehículos.[1] El Estado contestó las acciones. Negó las alegaciones de las recurridas.

---

[1] Los actos delictivos que originaron las confiscaciones de vehículos aquí impugnados varían de caso en caso. En el recurso Núm. CE-94-89, se solicita la revisión

Tras aquilatar los argumentos de las partes, los tribunales de instancia emitieron sentencias esencialmente iguales en todos los casos. Declararon con lugar las demandas de impugnación de confiscación presentadas por las recurridas. Los tribunales a quo concluyeron que las empresas que facultaron el financiamiento para la adquisición de los vehículos incautados son terceros inocentes y, por consiguiente, procedía satisfacer el balance adeudado de los vehículos confiscados al momento de la confiscación, o devolver los vehículos, o el valor de tasación, cual de los dos fuera menor.

Inconforme con dichas sentencias, el Procurador General, en representación del E.L.A., acudió ante nos. Alegó como único error en cada uno de los casos que erró el Honorable Tribunal de Instancia al resolver "que a tenor con la jurisprudencia en materia de confiscaciones, la empresa financiera y aseguradora de un vehículo de motor son terceros inocentes" (sic).

Atendidas las solicitudes de *certiorari* presentadas por el E.L.A., concedimos a las partes demandantes recurridas un término para comparecer y mostrar causa por la cual no se debía expedir el auto solicitado en cada recurso y dictar

---

de tres sentencias dictadas por el Tribunal Superior, Sala de Ponce, en *los casos civiles General Accident Insurance Co. v. E.L.A.*, JAC-91-2159 (relacionado a infracciones a los Arts. 32(a) y 8A de la Ley de Armas de Puerto Rico, Ley Núm. 17 de 19 de enero de 1951 (25 L.P.R.A. secs. 442(a) y 418a) y a los Arts. 3.2 y 3.3 de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989 (8 L.P.R.A. sec. 601 *et seq.*); *General Accident Insurance Co. v. E.L.A.*, JAC-91-899 (relacionado al delito de robo, Art. 173 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4279, e infracciones a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418), y *General Accident Insurance Co. v. E.L.A.*, JAC-90-3016 (relacionado con la infracción del Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 3 de junio de 1971 (24 L.P.R.A. sec. 2404)). En los recursos CE-94-328 y CE-94-337, en que se solicita la revisión de dos sentencias del Tribunal Superior, Sala de Aguadilla, la confiscación de los vehículos se relaciona con infracciones al Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, *supra*. En el recurso Núm. CE-94-329 se confiscó el vehículo por utilizarse para cargar y transportar propiedad hurtada, en contravención al Art. 15 de la Ley para la Protección de la Propiedad Vehicular, Ley Núm. 8 de 5 de agosto de 1987, según enmendada, 9 L.P.R.A. sec. 3209.

una sentencia revocatoria de las sentencias recurridas. Habiendo comparecido las partes, estamos en posición de resolver, y lo hacemos según lo intimado.

## II

En síntesis, el Estado alega que los foros de instancia incidieron al concluir que no puede imputársele a una empresa financiera los actos delictivos en que incurre el dueño de un vehículo de motor sujeto a un contrato de venta condicional. Los tribunales a quo concluyeron que las actuaciones del dueño del vehículo sujeto a un contrato de venta condicional, no pueden afectar el interés económico que tenga dicha empresa sobre la propiedad.

Las partes recurridas argumentan que dicha determinación fue conforme a derecho, porque las instituciones financieras en cuestión no estuvieron involucradas en la actividad ilícita que dio base a la confiscación y tampoco tenían manera de anticipar o evitar dicho tipo de actividad por parte de los compradores. Por ello, alegan que la confiscación de su interés económico sería injusta y no adelantaría los propósitos de la Ley Uniforme de Confiscaciones de 1988. Plantean con este argumento, en esencia, que el Estado se estaría apropiando de su interés propietario sin la debida compensación y en contravención de la Constitución del E.L.A. y la Constitución de Estados Unidos. Arguyen, además, que las decisiones de los foros sentenciadores están conforme a lo dispuesto por el legislador en cuanto al trámite que deberá cumplir el Estado en los casos de confiscaciones de vehículos de motor en el Art. 3 de la Ley Uniforme de Confiscaciones de 1988 (34 L.P.R.A. sec. 1723a).

Dicho artículo dispone, en lo pertinente, lo siguiente:

(2) El funcionario bajo cuya autoridad se efectúa la ocupación o la persona en la que él delegue notificará el hecho de la

ocupación y la tasación o valor estimado de la propiedad ocupada a las personas siguientes:

(a) Aquellas que por las circunstancias, información y creencia, el funcionario considere como dueños, y

(b) en los casos de vehículos de motor, se notificará además al dueño según consta en el Registro de Vehículos del Departamento de Transportación y Obras Públicas *y al acreedor condicional que a la fecha de la ocupación haya presentado su contrato para ser archivado. Además, en los casos que aplique, se notificará al acreedor hipotecario de un vehículo de motor cuando se haya cumplido con lo dispuesto en la sec. 1874 del Título 30.* (Énfasis suplido.)

Según las partes recurridas, el requisito de notificación al acreedor condicional esbozado en dicho artículo demuestra el propósito legislativo de que el interés de estas instituciones, que se encuentran al margen del uso ilegal del vehículo de motor, quede protegido.

Estos argumentos no nos convencen. Erraron los foros a quo en sus determinaciones. Veamos.

### III

En nuestra jurisdicción, hemos establecido reiteradamente que el procedimiento de confiscación de la Ley Uniforme de Confiscaciones de 1988 es de carácter *in rem*; es decir, va dirigido contra la cosa misma y no contra el dueño de la propiedad, su poseedor, encargado o cualquier otra persona con algún interés legal sobre ésta. Por ello, si el dueño, poseedor o encargado del vehículo, o la persona con interés legal sobre éste ha puesto, de forma voluntaria, dicho vehículo en posesión del infractor o de la persona bajo la cual éste actúa, los derechos de aquéllos corren la suerte del uso a que el infractor pueda someter el vehículo. *Del Toro Lugo v. E.L.A.*, 136 D.P.R. 973 (1994); *Carlo v. Srio. de Justicia*, 107 D.P.R. 356 (1978); *E.L.A. v. Tribunal Superior*, 94 D.P.R. 717 (1967); *Meléndez v. Tribunal Superior*, 90 D.P.R. 656, 674–678 (1964); *Estado Libre Asociado v. Tribl. Superior*, 76 D.P.R. 842 (1954); *Metro Taxicabs v.*

*Tesorero,* 73 D.P.R. 171 (1952); *General Motors Acceptance v. Brañuela,* 61 D.P.R. 725 (1943).

El alcance de esta norma fundamental quedó explicado con meridiana claridad en *Meléndez v. Tribunal Superior,* supra, pág. 675:

> Lo que distingue una confiscación *in rem* de una confiscación *in personam* es que la primera le niega al dueño de la propiedad, a su poseedor o encargado, o a cualquier persona con algún interés legal sobre la misma, todo derecho a reclamar dicha propiedad aunque pueda demostrar su inocencia ante el uso ilícito que se le haya dado a dicha propiedad. En la confiscación *in personam,* se les reconoce a las personas arriba enumeradas, el derecho a reclamar dicha propiedad demostrando su inocencia en cuanto al uso ilícito ....

■ La norma citada ha sido elaborada sobre la base de que la confiscación del instrumento del crimen es un medio importante para apoyar la lucha de las autoridades gubernamentales contra los eventos ilegales. Evita que el vehículo o el artículo confiscado pueda volverse a usar para fines ilícitos y sirve como castigo adicional para disuadir a los empresarios del crimen. Exposición de Motivos de la Ley Uniforme de Confiscaciones de 1988, Leyes de Puerto Rico, pág. 409.

■ Lo anterior no obstante, la norma general sobre el carácter *in rem* de las confiscaciones aludidas ha cedido en aquellas situaciones en que el propietario no ha puesto el vehículo en posesión del infractor de manera voluntaria, *E.L.A. v. Tribunal Superior,* supra, pág. 721, o cuando se han tomado medidas cautelares expresas para precaver el uso ilegal de la propiedad en la comisión de un delito. *Alverne Corp. v. Srio. de Justicia,* 130 D.P.R. 760 (1992); *Ochoteco v. Tribunal Superior,* 88 D.P.R. 517 (1963); *Carlo v. Srio. de Justicia,* supra. Siguiendo una "ruta de cautelosa atenuación de severidad" en la aplicación de la norma aludida, en los casos antes mencionados y otros hemos reconocido que cuando los dueños de automóviles no hayan

autorizado su uso, y sin su anuencia o conocimiento los vehículos hayan sido utilizados para la comisión de delitos, sus dueños son terceros inocentes, protegidos de la confiscación, si la conducta del conductor del vehículo confiscado fue tal que daba lugar a una apreciación de que éste cometió lo que nuestro Código Penal antes tipificaba como el delito de hurto de uso. *E.L.A. v. Tribunal Superior*, supra; *Meléndez v. Tribunal Superior*, supra; *Ochoteco v. Tribunal Superior*, supra.

 En los casos que nos ocupan no están involucrados los derechos del dueño del vehículo, sino más bien el interés económico de una entidad financiera y su aseguradora bajo un contrato de venta condicional.[2] La diferencia entre uno y otros, sin embargo, no viene al caso. Todos están igualmente cobijados por las normas antes mencionadas. Tanto el dueño del vehículo de motor como la empresa que lo financió o cualquier otra parte con interés en el vehículo, están sujetas a la naturaleza *in rem* de la confiscación. Tal es el tenor innegable de nuestros numerosos precedentes. En efecto, la extensa corriente jurisprudencial sobre la que se apoya la fundamental norma en cuestión se originó precisamente en un caso en el cual la parte que reclamaba ser tercero inocente era un vendedor condicional de un vehículo de motor, como lo son las recurridas en los casos ante nos ahora. Véanse: *General Motors Acceptance v. Brañuela*, supra, y 60 D.P.R. 696 (1942). En dicho caso resolvimos expresamente que el vendedor condicional de un automóvil, al igual que su dueño, quedaba perjudicado por la naturaleza *in rem* de una confiscación bajo la ley vigente si el

---

[2] Nótese que, aunque en los contratos de venta condicional el vendedor retiene un título formal de propiedad hasta que el bien se haya pagado en su totalidad, el comprador del bien es, en términos legales y prácticos, el dueño del mismo. Ley de Ventas Condicionales, Ley Núm. 61 de 13 de abril de 1916 (10 L.P.R.A. sec. 31 *et seq.*). Véanse: *Montalvo v. Valdivieso*, 38 D.P.R. 545 (1928); *Arena v. Batalla, y Francisco, Interventor*, 48 D.P.R. 31 (1935); *General Motors Acceptance Corp. v. Corte Mpal.*, 53 D.P.R. 1 (1938); *Berríos v. Tito Zambrana Auto, Inc.*, 123 D.P.R. 317 (1989).

infractor obtuvo la posesión del vehículo directa o indirectamente del dueño o del tercero interesado.

Es cierto que, desde *Ochoteco v. Tribunal Superior*, supra, hemos seguido una ruta de atenuación de la severidad de la confiscación. Expresamos en *Ochoteco v. Tribunal Superior*, supra, pág. 528, que

> ... aquel que cede o entrega la posesión de un vehículo de ordinario asume el riesgo del uso ilegal que pudiera dársele al mismo. Pero no toda entrega de la posesión de un vehículo tiene iguales motivaciones ni idéntica justificación, ni la misma necesidad, ni similares propósitos.

■ Resaltamos allí, y reiteramos aquí ahora, que cada caso debe resolverse conforme a sus particularísimos hechos. Sin embargo, lo resuelto en *Ochoteco v. Tribunal Superior*, supra, no altera en sí la naturaleza *in rem* de la confiscación ni da base per se para distinguir la situación del dueño de un vehículo de la situación del vendedor condicional de éste. Es decir, la atenuación de severidad, el reconocimiento de que puede haber "terceros inocentes", no tiene esencialmente nada que ver con la cuestión de si el sujeto es el vendedor condicional del vehículo más bien que su dueño. El carácter de "tercero inocente" sólo depende de la naturaleza de la posesión o uso del vehículo por el infractor. Si éste no obtuvo la posesión del vehículo de manera voluntaria o si se apartó sustancialmente de las medidas cautelares o las instrucciones particulares expresas de quien le entregó dicha posesión, de modo que incurrió en conducta constitutiva de lo que antes se tipificaba como hurto de uso, *Ochoteco v. Tribunal Superior*, supra, entonces, y sólo entonces, tanto el dueño del vehículo como el vendedor condicional o cualquier otro con interés en éste son "terceros inocentes", protegidos contra la confiscación.

■ Finalmente, el solo hecho de que la Ley Uniforme de Confiscaciones de 1988 requiera que se notifique de la confiscación al acreedor condicional que tiene su gravamen inscrito en el Departamento de Transportación y Obras Pú-

blicas no es un criterio determinante para evaluar un reclamo de tercero inocente. El requisito estatutario de notificación al acreedor condicional persigue el propósito de salvaguardar los derechos constitucionales de una parte que tiene un interés en la propiedad confiscada y brindarle la oportunidad de levantar y probar las defensas válidas que pueda tener, es decir, la oportunidad de ser oído. Tal es el único alcance del requisito en cuestión. Nada en el texto o historial de la ley sugiere que este requisito de *notificación* le concede a los acreedores condicionales la inmunidad contra confiscaciones que reclaman las recurridas.

## IV

Con base en los principios y conceptos normativos antes reseñados y aplicados a los hechos ante nos, en ninguno de los casos que ahora nos ocupan la parte recurrida ha probado que los infractores advinieran en posesión de los vehículos utilizados para fines delictivos sin el consentimiento expreso o implícito del dueño del vehículo, o que incurrieran en lo que antes se tipificaba como hurto de uso. Las partes recurridas sólo han alegado que desconocían el uso ilícito que se le daría al vehículo en cuestión y que le era imposible evitarlo. Ello, como ya hemos señalado, no es fundamento suficiente para anular la confiscación, ya que, como se ha señalado antes, nuestra jurisprudencia ha establecido con claridad que los derechos del dueño o de terceros con interés corren la suerte del uso a que el infractor pueda someter el vehículo cuando éste ha sido puesto en posesión del infractor de modo voluntario directa o indirectamente, y no ha incurrido en hurto de uso. Como, para fines de sostener la confiscación, lo determinante es la naturaleza de la posesión del vehículo por el infractor, entonces no procede la impugnación de la confiscación en los casos ante nos.

■ En *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416

U.S. 663 (1974), el Tribunal Supremo de Estados Unidos sostuvo la constitucionalidad de nuestra ley de confiscaciones, aun cuando ésta no contiene ninguna defensa expresa para proteger a los dueños inocentes que son afectados por una confiscación. En dicha ocasión, el Tribunal Supremo federal señaló que los estatutos confiscatorios no se declaran inconstitucionales meramente porque éstos afecten los intereses propietarios de inocentes. Íd., pág. 680. Asimismo, señaló que la aplicación de los estatutos confiscatorios a terceros inocentes con algún interés asegurado podría tener el efecto de inducirlos a ejercer mayor cuidado al transferir la posesión de su propiedad.(³)

Aunque reconocemos que entidades financieras como las recurridas, y sus compañías aseguradoras, son terceros con intereses ajenos a los hechos que motivaron la confiscación de los vehículos, estamos obligados a darle curso a la determinación del Estado de confiscar los vehículos que estén siendo utilizados para actividades criminales. Sostener la interpretación de tercero inocente adoptada por los tribunales de instancia y anular las confiscaciones realizadas en los casos ante nos, debilitaría gravemente el mecanismo de la confiscación y burlaría el propósito del estatuto confiscatorio, privando al Estado del poder de penalizar el uso de tales vehículos cuando éstos son utilizados como instrumentos del crimen. Este resultado sería drástico, sobre todo en vista de que en Puerto Rico la gran mayoría de los vehículos que se adquieren en nuestra isla son comprados mediante préstamos a instituciones bancarias y financieras, y no nos compete a nosotros ordenarlo. Éste es un asunto para la determinación legislativa.(⁴)

---

(³) "To the extent that such forfeiture provisions are applied to lessors, bailors or secured creditors who are innocent of any wrongdoing, confiscation may have the desirable effect of inducing them to exercise greater care in transfering possesion of their property." *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 687–688 (1974).

(⁴) En algunas jurisdicciones norteamericanas, *estatutariamente* se ha reconocido que, bajo determinadas circunstancias, el interés del acreedor de un contrato de venta condicional gozará de alguna protección contra la confiscación de un vehículo

Nuestra decisión puede parecer injusta para estas instituciones, principalmente por el hecho de que, como mencionáramos antes, éstas no tienen ninguna relación real con los hechos criminales que motivaron la confiscación de los vehículos. Sin embargo, si se aplica la Ley de Ventas Condicionales de 1988 a los casos que nos ocupan, resulta claro que el interés económico en el gravamen que poseen las entidades recurridas sobre los vehículos sujetos a venta condicional no desaparece con su confiscación, puesto que dicha ley establece expresamente que el acreedor condicional en los casos de incumplimiento con el contrato puede optar entre la reposesión del artículo *o la acción judicial en cobro de dinero.* 10 L.P.R.A. sec. 36. En este sentido, aun cuando no pueda recuperarse la unidad vendida, subsiste el derecho del vendedor a la acción en cobro de dinero contra el comprador por el balance adeudado.

Por otro lado, se sabe que, de ordinario, al momento de financiar la venta de un vehículo de motor, las compañías bancarias y comerciales que se dedican a ese negocio prevén la posibilidad de la pérdida ocasional de su interés por razón de una confiscación y toman medidas para protegerse contra dicho tipo de pérdida, exigiendo seguros a su favor, de modo que puedan recuperar la inversión económica realizada.

De cualquier modo, de existir razones válidas en favor

---

por el Estado. *1957 Chevrolet v. Division of Narcotic Control,* 189 N.E.2d 347 (1963); *Matter of One Cessna Aircraft, etc.,* 559 P.2d 417 (1977); *General Motors Acceptance Corporation v. Atkins,* 325 S.W.2d 270 (1959).

Por otro lado, algunos tribunales han resuelto que bajo la ley federal conocida por *Comprehensive Drug Abuse Prevention and Control Act of 1970* (21 U.S.C. sec. 801 *et seq.*), son terceros inocentes, exentos de la confiscación, las corporaciones de crédito y acreedores hipotecarios que han financiado la compra de artículos, utilizados en violación de dicha ley. Véanse: *United States v. All That Tract & Parcel of Land,* 602 F. Supp. 307 (D. Atl. 1985); *U.S. v. Federal Nat. Mortg. Ass'n,* 946 F.2d 264 (4to Cir. 1991).

No obstante el valor persuasivo que dicha jurisprudencia nos merece, consideramos que, conforme a las interpretaciones que hemos adoptado en cuanto a la figura del tercero inocente y dentro del marco conceptual en nuestra Ley Uniforme de Confiscaciones de 1988 —Ley Núm. 93 de 13 de julio de 1988 (34 L.P.R.A. sec. 1723 *et seq.*)— dicha interpretación jurisprudencial federal no puede ser adoptada en nuestra jurisdicción, salvo por mandato legislativo expreso.

de la protección de los intereses de entidades financieras y sus compañías aseguradoras en casos de confiscación,([5]) le compete al legislador, no a este Tribunal, determinar si debe concederse dicha protección o no.

Si este Tribunal siguiese el camino escogido por los foros de instancia y eximiese a las entidades comerciales y a sus compañías aseguradoras de los efectos de la confiscación de automóviles, se afectaría fatalmente el esquema provisto en nuestro estatuto confiscatorio y la facultad del Gobierno para realizar las confiscaciones en cuestión, todo ello en grave menoscabo del mandato legislativo sobre este asunto. Los tribunales no tenemos tal facultad, en ausencia de defectos constitucionales en la ley.([6])

Por los fundamentos aquí expuestos, *se dictará sentencia para revocar la dictada por el Tribunal Superior, Sala de Ponce, el 24 de noviembre de 1993, en el caso "General Accident Insurance Co. v. E.L.A.", Caso Núm. CE-94-89, y las sentencias dictadas por el Tribunal Superior, Sala de Aguadilla, el 31 de marzo de 1994 en los casos "Scotiabank de P.R. v. E.L.A.", Caso Núm. CE-94-328, "Ponce Federal Bank v. E.L.A.", Caso Núm. CE-94-329, y "Banco Popular de P.R. v. E.L.A.", Caso Núm. CE-94-337.*

---

([5]) Por ejemplo, las recurridas argumentan que las pérdidas de las compañías aseguradoras por concepto de confiscaciones acarrean un aumento en las primas de los contratos de seguros de los automóviles y que dicho aumento, a la larga, es pagado por los consumidores.

([6]) Ya habíamos determinado antes que el estatuto en cuestión es constitucionalmente válido. *General Motors Acceptance v. Brañuela*, 61 D.P.R. 725 (1943); *Carlo v. Srio. de Justicia*, 107 D.P.R. 356 (1978). Además, continúa vigente la decisión del Tribunal Supremo de Estados Unidos sobre la validez constitucional de nuestra Ley Uniforme de Confiscaciones de 1988. Véase *Austin v. United States*, 509 U.S. 602 (1993).