TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **COOPERATIVA DE SEGUROS MULTIPLES DE PUERTO RICO Y OTROS**<br><br>Apelado<br><br>v.<br><br>**ESTADO LIBRE ASOCIADO DE PUERTO RICO**<br><br>Apelante | KLAN202400877 | ***APELACIÓN***<br>procedente del Tribunal de Primera Instancia Sala Superior de **Arecibo**<br><br>Caso Número:<br>AR2023CV01751<br>(SALON 404)<br><br>Sobre:<br>**IMPUGNACION DE CONFISCACION (LEY NUM. 119-2011)** |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de noviembre de 2024.

Comparece ante nos, la Oficina del Procurador General de Puerto Rico, en adelante, Procurador o apelante, solicitando que revisemos la *"Sentencia"* notificada el 28 de junio de 2024. En la misma, el Tribunal de Primera Instancia, Sala de Arecibo, en adelante, TPI-Arecibo, declaró "Ha Lugar" la *"Solicitud de Sentencia Sumaria"* de Americas Leading Finances, LLC, en adelante, ALF o apelado.

Por los fundamentos que expondremos a continuación, *confirmamos* la sentencia apelada.

**I.**

El 18 de agosto de 2023 se emitió una Orden de Confiscación, para que el Negociado de la Policía de Puerto Rico ocupara un vehículo de motor.[1] La confiscación respondió a una violación al Artículo 190 (d) del Código Penal de Puerto Rico, en adelante, Código Penal, 33 LPRA sec. 5260. Al momento de la confiscación, el vehículo

---
[1] Apéndice del recurso, pág. 57.

Número Identificador

SEN2024 _____

en cuestión era propiedad registral de Kristian Beltrán Berríos, en adelante, Beltrán Berríos.[2] Sin embargo, el mismo se encontraba en posesión de Jomar Otero Cruz, en adelante, Otero Cruz, quien posteriormente se declaró culpable por el delito de Robo.[3] El vehículo de motor confiscado fue tasado por el Estado Libre Asociado de Puerto Rico, en adelante, ELA, en $13,000.00.[4]

El vehículo objeto de la controversia fue financiado en el año 2022 por ALF y asegurado por la Cooperativa de Seguros Múltiples, en adelante, Seguros Múltiples.[5] El 19 de septiembre de septiembre de 2023, Seguros Múltiples y ALF incoaron una *"Demanda"* contra el ELA y el Negociado de la Policía de Puerto Rico, en la cual impugnaron la validez de la confiscación del vehículo propiedad de Beltrán Berríos, por virtud del Endoso de Confiscación a favor de ALF.[6] Además, el 2 de octubre de 2023, Seguros Múltiples y ALF consignaron la cantidad de $13,000.00 en el TPI-Arecibo, conforme a lo requerido por el Artículo 16 de la Ley Uniforme de Confiscaciones de 2011, en adelante, Ley de Confiscaciones, 34 LPRA sec. 1724 (m).[7] Mediante *"Orden"* del 3 de octubre de 2023, el Foro Apelado declaró "Ha Lugar" la fianza consignada, y ordenó a la Junta de Confiscación la devolución del vehículo de motor a los demandantes.[8] Por su parte, el ELA presentó su *"Contestación a Demanda"* el 17 de noviembre de 2023.[9]

Posteriormente, el 28 de marzo de 2023, Seguros Múltiples y ALF presentaron una *"Moción Anunciando Evidencia para Vista de Legitimación Activa",*[10] la cual fue celebrada el 1 de abril de 2024.[11]

---

[2] Apéndice del recurso, pág. 64.
[3] Consulta de Casos en el Portal del Poder Judicial, Caso Núm.
C BD2023G0121.
[4] Apéndice del recurso, pág. 100.
[5] *Id.*, págs. 61 y 67.
[6] *Id.*, pág. 63.
[7] *Id.*, pág. 97.
[8] *Id.*, pág. 105.
[9] *Id.*, pág. 106.
[10] *Id.*, pág. 113.
[11] *Id.*, pág. 124.

La prueba presentada en la moción, y posteriormente admitida en la vista, fue la carta de notificación de confiscación,[12] fechada el 29 de agosto de 2023 y el certificado de título expedido el 13 de septiembre de 2022, *del cual obra el gravamen a favor de ALF*.[13] En la referida vista, Seguros Múltiples desistió de su causa de acción, y se le reconoció legitimación activa a ALF.

El 5 de abril de[14] 2024, el TPI-Arecibo emitió una *"Sentencia Parcial"* en la que, a solicitud de Seguros Múltiples, el Foro Primario desistió de forma parcial y sin perjuicio en cuanto a ella. Así las cosas, el 2 de mayo de 2024, ALF radicó una *"Solicitud de Sentencia Sumaria"*.[15] En su petitorio, planteó los siguientes hechos incontrovertibles:

1. El Estado Libre Asociado de Puerto Rico, a través de la Policía de Puerto Rico, ocupó el 4 de agosto de 2023, un vehículo de motor marca Hyundai, modelo Elantra, del año 2018 y con tablilla IYW252, el cual aparece registrado a nombre del Sr. Kristian Omar Beltrán Berrios en el Registro de Vehículos del Departamento de Transportación y Obras Públicas de Puerto Rico.[16]

2. El vehículo está registrado a nombre del Sr. Kristian Omar Beltrán Berrios, con un gravamen registral a favor de Americas Leading Finance, LLC, toda vez que el contrato de venta condicional a plazos fue debidamente inscrito.[17]

3. La compra de dicho vehículo fue financiada a través de Americas Leading Finance, LLC el 17 de junio de 2022 mediante el contrato suscrito por el Sr. Beltrán Berrios. Dicho contrato fue debidamente inscrito en el Departamento de Transportación y Obras Públicas según surge de la certificación provista. Por tanto, dicha unidad posee un gravamen registral a favor de Americas Leading Finance, LLC.[18]

4. El Sr. Beltrán Berrios tiene un balance pendiente de pago por motivo del contrato de venta al por menor a plazos de la

---

[12] Apéndice del recurso, pág. 115.
[13] *Id.*, pág. 119.
[14] *Id.*, pág. 125.
[15] *Id.*, pág. 127.
[16] *Id.*, págs. 147 y 152.
[17] *Id.*, págs. 147 y 160.
[18] *Id.*, págs. 147, 156 y 160.

unidad previamente identificada el cual asciende al monto de $17,938.17.[19]

5. El contrato de venta al por menor a plazos dispone en la página 2 y en la sección sobre "OBLIGACIONES RESPECTO AL VEHÍCULO" lo siguiente: "Usted se obliga a conservar el Vehículo en perfectas condiciones, con la excepción del uso y desgaste natural, y a no utilizar el Vehículo en violación de las leyes, reglamentos u órdenes de cuerpos gubernamentales que sean aplicables al Vehículo o a sus usos. Usted se compromete a no exponer el Vehículo a mal uso o confiscación, y a no permitir que su valor sea menoscabado."[20]

6. A su vez, en la misma página, pero en la sección de "CASOS DE INCUMPLIMIENTO" el Contrato dispone que: "Hasta el límite máximo permitido por ley aplicable, el Vendedor podrá acelerar el vencimiento del balance adeudado bajo el Contrato y exigir el pago total de esa suma, que será líquida y exigible desde ese momento, en cualesquiera de las siguientes circunstancias: [...] 4. Hasta el límite máximo permitido por ley, si usted dejase de cumplir con los términos, condiciones, acuerdos cláusulas o cualquier otra de sus obligaciones bajo este Contrato."[21]

7. De otro lado, la misma página y sección señala lo siguiente: "K. Hasta el límite máximo permitido por ley, también podrá acelerarse el vencimiento de toda o parte de la suma adeudada bajo este Contrato por incumplimiento con el mismo, bajo las siguientes circunstancias: [...] (7) el Vehículo es embargado y/o confiscado por alguna autoridad del gobierno de Puerto Rico, estatal, federal o local."[22]

8. El endoso de confiscación de la póliza de seguros número PAP5352778, emitida para proteger el vehículo en cuestión, es en beneficio única y exclusivamente del acreedor condicional que a la fecha de la ocupación del vehículo tenía un gravamen mobiliario registrado a su favor, siendo en el presente caso Americas Leading Finance, LLC.[23]

9. Al momento de la ocupación, el vehículo confiscado pertenecía al Sr. Beltrán Berrios, deudor del préstamo otorgado por Americas Leading Finance, LLC.[24]

---

[19] Apéndice del recurso, págs. 148 y 161.
[20] *Id.*, págs. 148 y 157.
[21] *Id.*
[22] *Id.*
[23] *Id.*, págs. 149 y 162-163.
[24] *Id.*, págs. 147 y 152.

10. Americas Leading Finance, LLC no consintió de forma alguna ni mucho menos presentó su anuencia para que el vehículo marca Hyundai, modelo Elantra, del año 2018 y con tablilla IYW-252 fuera utilizado en contravención a las leyes del Estado Libre Asociado de Puerto Rico, particularmente la legislación de índole penal, por el Sr. Jomar Otero Cruz ni cualquier otra persona.[25]

11. Americas Leading Finance, LLC tomó medidas cautelares expresas para evitar el uso ilegal del referido vehículo de motor con el propósito de precaver el uso ilegal de la propiedad, entiéndase la comisión de un delito. En particular, el contrato de venta al por menor a plazos señala que el dueño del vehículo se obliga "a conservar el Vehículo en perfectas condiciones, con la excepción del uso y desgaste natural, y a no utilizar el Vehículo en violación de las leyes, reglamentos u órdenes de cuerpos gubernamentales que sean aplicables al Vehículo o a sus usos. Usted se compromete a no exponer el Vehículo a mal uso o confiscación, y a no permitir que su valor sea menoscabado." Americas Leading Finance, LLC implementó medidas para prevenir la actividad delictiva y el/la infractor(a), Sr. Jomar Otero Cruz, actuó de manera contraria apartándose de las instrucciones del acreedor quien es un tercero inocente con interés financiero y económico.[26]

12. El dueño registral y/o la persona imputada de delito se apartó sustancialmente de las medidas cautelares y de las instrucciones particulares expresadas por Americas Leading Finance, LLC en el contrato de venta al por menor a plazos, por tanto, Americas Leading Finance, LLC se considera un Tercero Inocente protegido contra la confiscación, según se ha reconocido jurisprudencialmente.[27]

13. Los actos de violación de ley que se alegan fueron cometidos sin la autorización, expresa o implícita, de Americas Leading Finance, LLC, quien no tuvo conocimiento de ello hasta tanto recibió la notificación de la confiscación de parte del Estado.[28]

14. La parte demandante de epígrafe tienen un interés propietario en el vehículo antes descrito y estaba -y está- ajeno a cualquier acto delictivo que haya dado lugar a la confiscación del vehículo en cuestión.[29]

---

[25] Apéndice del recurso, pág. 149.
[26] *Id.*, págs. 149 y 157.
[27] *Id.*, págs. 149-150.
[28] *Id.*, pág. 150.
[29] *Id.*, pág. 150.

En esencia, ALF aduce que del contrato de compraventa surge que este le advirtió al comprador del vehículo en cuestión que no podía utilizar el mismo para actos delictivos. Por eso, señaló que el único asunto en controversia que debía resolver el Foro Apelado es si a ALF le aplicaba la defensa del "tercero inocente". Para sustentar su moción, ALF adjuntó los siguientes documentos:

1. Declaración Jurada de Jessybel Matos Ayala;
2. Carta de notificación de confiscación;
3. Certificación de título;
4. Contrato de venta al por menor a plazos del vehículo objeto de controversia;
5. Carta de balance adeudado;
6. Copia certificada de la Póliza de Seguros Múltiples

Por su parte, el ELA radicó su *"Oposición a Solicitud de Sentencia Sumaria"*.[30] En su escrito, el demandado presentó varios hechos que presuntamente están en controversia. Pertinente a la materia que nos ocupa, el ELA alega en su oposición que las advertencias hechas por ALF en el contrato de compraventa no son instrucciones claras y específicas, por lo que no pueden considerarse medidas preventivas contra actos delictivos.[31]

El 28 de junio de 2024, el TPI-Arecibo notificó su *"Sentencia"*, en la que declaró "Ha Lugar" la solicitud de ALF para que se dicte sentencia sumaria.[32] Inconforme, el 10 de julio de 2024, el ELA presentó una *"Moción en Reconsideración a Sentencia"*.[33] ALF se opuso a esta el 30 de julio de 2024.[34] Sin embargo, la reconsideración fue rechazada por el Foro Apelado el 30 de julio de 2024.[35]

---

[30] Apéndice del recurso, pág. 165.
[31] No surge del expediente físico que obra en autos, ni en el expediente digital de SUMAC documentos utilizados por el ELA para oponerse a la solicitud de sentencia sumaria.
[32] Apéndice del recurso, pág. 1.
[33] *Id.*, pág. 20.
[34] *Id.*, pág. 34.
[35] *Id.*, pág. 46.

Así las cosas, el 27 de septiembre de 2024, el Procurador, en representación del ELA, compareció ante nos mediante un recurso de *"Apelación"*. El 1 de octubre de 2024, concedimos a la parte apelada hasta el 28 de octubre de 2024 para presentar su posición respecto al recurso de autos, conforme a la Regla 22 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 22. Finalmente, en cumplimiento de orden, ALF presentó su *"Alegato en Oposición a Apelación"* el 17 de octubre de 2024, perfeccionando así el recurso ante nuestra consideración, por lo cual estamos en posición de resolver.

## II.

### A. Apelación

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio (alegaciones, mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, *apelación*) y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La etapa de la *apelación* se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel "que se presenta ante el foro apelativo intermedio cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Tribunal de Primera Instancia". *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019); Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 y R. 52.2. Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de *certiorari.* Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles,* 142 DPR 241, 252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell,* 199 DPR 311, 317 (2017).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.,* 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007).

Sabido es que las determinaciones de hechos y de credibilidad del Foro Primario deben ser merecedoras de gran deferencia por parte de los foros apelativos, puesto que – de ordinario – se encuentra en mejor posición para aquilatar la prueba testifical. *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 779 (2022); *Hernández Maldonado v. Taco Maker,* 181 DPR 281, 289 (2011); *S.L.G. Rivera Carrasquillo v. A.A.A.,* 177 DPR 345, 356 (2009); *Argüello v. Argüello,* 155 DPR 62 (2001); *Pueblo v. Bonilla Romero,* 120 DPR 92, 111 (1987). Bajo este supuesto, los foros de primera instancia tienen la oportunidad de oír, ver y apreciar el comportamiento de los testigos. *Barreto Nieves et al. v. East Coast,* 2024 TSPR 40, 213 DPR ___ (2024); *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 219, (2021).

Lo cierto es que los Foros Apelativos no deben intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene facultad para sustituir por sus propias apreciaciones, las determinaciones del Tribunal de Primera Instancia. *Barreto Nieves et al. v. East Coast,* supra; *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007); *Rolón v. Charlie Car Rental,* 148 DPR 420, 433 (1999). Esto es, los tribunales apelativos deben mantener deferencia para con la apreciación de la prueba que realiza el Foro Primario. *McConnell Jiménez v. Palau,* 161 DPR 734, 750 (2004).

Sin embargo, la deferencia judicial no es absoluta, pues podrá ser preterida en ciertas instancias. Nuestro Máximo Foro ha reiterado que, los tribunales apelativos "no debemos intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto". *W.M.M. P.F.M., et al. v. Colegio et al.,* supra, pág. 903; *Serrano Muñoz v. Auxilio Mutuo,* supra; *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219; *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *Dávila Nieves v. Meléndez Marín,* supra; *S.L.G. Rivera Carrasquillo v. A.A.A.*, supra, pág. 356.

**B. Sentencia Sumaria**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Cruz, López v. Casa Bella y otros,* 2024 TSPR 47, 213 DPR ___ (2024); *Birriel Colón v. Econo y otros,* 2023 TSPR 120, 213 DPR ___ (2023); *Serrano Picón v. Multinational Life Ins.*, 2023 TSPR 118, 212 DPR ___ (2023); *Oriental Bank v. Caballero García*, 2023 TSPR 103, 212 DPR ___ (2023); *González Meléndez v. Mun. San Juan et al.*, 2023 TSPR 95, 212 DPR ___ (2023); *Acevedo y otros v. Depto. Hacienda y otros,*

2023 TSPR 80, 212 DPR ___ (2023); *Universal Ins. y otros v. ELA y otros*, 211 DPR 455, 471 (2023); *Segarra Rivera v. Int'l. Shipping et al.,* 208 DPR 964, 979 (2022). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Cruz, López v. Casa Bella y otros,* supra; *Oriental Bank v. Caballero García,* supra; *Segarra Rivera v. Int'l. Shipping et al.,* supra, pág. 980. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.,* supra; *Ramos Pérez v. Univisión,* 178 DPR 200, 214 (2010). Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con

indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García,* supra; *Pérez Vargas v. Office Depot*, 203 DPR 687, 698 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*,* pág. 43. Por el contrario, *quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. Id.* Es decir, el hecho de no oponerse a un petitorio sumario no implica que este necesariamente proceda, sin embargo, si no se demuestra que existen controversias sustanciales sobre los hechos materiales, nada impide al foro sentenciador de dictar sentencia sumaria. *Ramos Pérez v. Univisión,* supra, pág. 215.

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra, pág. 44. Claro está, para cada uno de estos supuestos

deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil, *supra. Id.* En otras palabras, *la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. Id.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra*, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *Id.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón*, supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros*, supra; *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o

deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Id.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otros v. ELA y otros,* supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

> *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, "nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria". *Cruz, López v. Casa Bella y otros,* supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra,* y su jurisprudencia interpretativa. *Id.* De esta manera, si entendemos que los hechos materiales realmente

están incontrovertidos, debemos revisar *de novo* si el Foro Primario aplicó correctamente el derecho. *Id.*

### C. La Ley de Confiscaciones y la doctrina del Tercero Inocente

La confiscación es el acto de ocupación que hace el Estado de algún bien o propiedad, por haber sido utilizado en algún acto delictivo. *Santini Casiano v. ELA et al.,* 199 DPR 389, 393 (2017); *Flores Pérez v. ELA*, 195 DPR 137, 146 (2016); *Doble Seis Sport v. Dpto. Hacienda*, 190 DPR 763, 784 (2014); *Centeno Rodríguez v. E.L.A.*, 170 DPR 907, 912-913 (2007); *First Bank v. E.L.A.*, 164 DPR 835, 842-843 (2005); *Cooperativa v. E.L.A.*, 159 DPR 37, 43 (2003); *Del Toro Lugo v. E.L.A.*, 136 DPR 973, 980 (1994). El procedimiento de confiscación está regulado por la Ley de Confiscaciones, en cuya Exposición de Motivos se enfatizó que el propósito de este estatuto es establecer las normas que regirán el procedimiento a seguir en toda confiscación. *Flores Pérez v. ELA,* supra, pág. 146. Asimismo destacó que dicha legislación abarca aspectos fundamentales para establecer un trámite expedito, justo y uniforme para la confiscación de bienes por parte del Estado y la disposición de éstos.

La Ley 119-2011 reitera los cimientos básicos sobre los que está predicada la figura de la confiscación. La Exposición de Motivos señala que:

> En nuestra jurisdicción, la confiscación es una acción civil o *in rem*, distinta y separada de cualquier acción *in personam.* La confiscación que lleva a cabo el Estado se basa en la ficción legal de que la cosa es la ofensora primaria. El procedimiento *in rem* tiene existencia independiente del procedimiento penal de naturaleza *in personam,* y no queda afectado en modo alguno por este. Los procedimientos de confiscación civil pueden llevarse a cabo y culminarse antes de que se acuse, se declare culpable o se absuelva al acusado. Incluso, pueden llevarse aun cuando no se haya presentado ningún cargo. Esto debido a que la acción civil se

dirige contra la cosa en sí misma, en general, la culpabilidad o inocencia del propietario es irrelevante en cuanto a la procedencia o no de la confiscación civil.

*Goldmith-Grant Co. V. United States*, 254 U.S. 505 (1921). *Calero-Toledo v. Pearson Yatch Leasing Co.*, 416 U.S. 663 (1974). *United States v. One Assortment of 89 Firearms*, 465 U.S. 354 (1984).

La modalidad confiscatoria de carácter *in rem* sobre la cosa, es distinta y separada del proceso *in personam.* Es decir, una acción civil que se dirige contra la cosa misma y no contra el dueño de la propiedad, poseedor, encargado, o cualquier otra persona con interés legal sobre el bien. *B.B.V. v. E.L.A.,* 180 DPR 681, 686 (2011). A base de lo anterior, cuando alguien que ostenta algún interés legal sobre un automóvil lo ha puesto voluntariamente en posesión de otra persona, y esta lo utiliza para propósitos delictivos, "su derecho corre la suerte del uso al que el infractor someta el vehículo". *Flores Pérez v. ELA,* supra, pág. 149; *B.B.V. v. E.L.A.,* supra, pág. 686. Esta acción estatal puede ser impugnada por quienes aleguen poseer un interés legal sobre la propiedad ocupada. *Mapfre Praico v. ELA,* 188 DPR 517 (2013).

A tales efectos, el Tribunal Supremo de Puerto Rico ha expresado que el procedimiento de confiscación es de naturaleza *in rem* porque se dirige contra la cosa y no el dueño. *Mapfre Praico v. E.L.A., supra,* pág. 525; *Del Toro Lugo v. E.L.A., supra.* El Artículo 8 de la Ley de Confiscaciones, supra, sec. 1724e, así lo reconoce.

Cabe señalar que el Artículo 25 de la Ley Uniforme de Confiscaciones, supra, sec. 1724v, excluye de los bienes sujetos a confiscación, a los vehículos que son robados o apropiados ilegalmente, salvo que exista un vínculo criminal entre el dueño y el autor de los delitos mencionados. Esto es así, pues el Tribunal Supremo de Puerto Rico ya había resuelto que quien cede consciente y voluntariamente la posesión de la cosa al "infractor o de la persona

bajo la cual éste actúa, los derechos del dueño corren la suerte del uso a que el poseedor pueda someter el vehículo". *Del Toro Lugo v. E.L.A, supra*, citando a *Estado Libre Asociado v. Tribunal. Superior*, 76 DPR 842 (1954). Véase, además, *Flores Pérez v. ELA,* supra*; First Bank Uni. Ins. Co. v. ELA,* 156 DPR 77, 83 (2002); *Metro Taxicabs v. Tesorero*, 73 DPR 171 (1952) y *General Motors Acceptance v. Brañuela*, 61 DPR 725 (1943).

La validez de la confiscación está supeditada al cumplimiento del debido proceso. *Pueblo v. González Cortés*, 95 DPR 164, 167-168 (1967). Conforme a este principio constitucional, el Tribunal Supremo desarrolló la doctrina del *tercero inocente* para proteger los intereses económicos y propietarios de terceros sobre un vehículo confiscado cuando no se han involucrado en la actividad delictiva que motiva la confiscación. *Flores Pérez v. ELA,* supra; *First Bank Uni. Ins. Co. v. ELA,* supra; *General Accident Ins. Co. v. E.L.A.*, 137 DPR 466 (1994).

Aunque el ejercicio de confiscar un vehículo es de naturaleza in rem, por medio de esta doctrina, nuestro más Alto Foro ha cedido este entendido "en aquellas situaciones en que el propietario no ha puesto el vehículo en posesión del infractor de manera voluntaria, o cuando se han tomado medidas cautelares expresas para precaver el uso ilegal de la propiedad en la comisión de un delito". *Id*. pág. 473. (Citas omitidas). Además, la jurisprudencia ha reconocido que el ejercicio de impugnar una confiscación, y las particularidades que suscitan sobre sus interesados, ameritan que cada caso sea evaluado individualmente. *Id.* pág. 474; *Ochoteco v. Tribunal Superior*, 88 DPR 517, 528 (1963).

Por eso, el carácter del *tercero inocente* depende únicamente de como el infractor obtuvo la posesión del vehículo o del uso que le haya dado al mismo. *Id*. Es decir, si este "no obtuvo la posesión del vehículo de manera voluntaria o si se apartó sustancialmente de

las medidas cautelares o las instrucciones particulares expresas de quien le entregó dicha posesión [...]". *Flores Pérez v. ELA,* supra; *General Accident Ins. Co. v. E.L.A.*, supra, pág.474. Por todo lo cual, no solo los dueños de un vehículo pueden ser considerados *terceros inocentes,* sino que los derechos económicos de una entidad financiera también, siempre que logren acreditar su interés sobre el vehículo, y evidenciar que cumplen con los elementos de tercero inocente. *Id.; First Bank, Univ. Ins. Co. v. E.L.A.*, supra. Si el infractor se aparta de las instrucciones recibidas, el dueño y cualquier otro con interés en la propiedad confiscada son terceros inocentes. *Del Toro Lugo v. E.L.A.*, supra.

**III.**

El apelante ante nos solicita que revoquemos el dictamen del TPI-Arecibo, en el cual reconoció que ALF es un *tercero inocente* en la confiscación del vehículo de motor que le financió a Beltrán Berríos. Para ello, arguye que este no logró establecer su defensa. *No le asiste razón.*

Como expusimos previamente, una entidad financiera con un interés legal sobre un vehículo confiscado sí puede levantar la defensa de *tercero inocente*. Para ello, debió probar que el individuo a quien se le confiscó el vehículo no obtuvo voluntariamente el mismo, o se apartó de las instrucciones ofrecidas para evitar el uso ilegal del auto. Logrado esto, ALF podía levantar exitosamente la defensa en cuestión, e impugnar la confiscación.

En el caso de marras, Beltrán Berrios compró el vehículo aquí confiscado, y lo financió por medio de ALF. Surge del contrato de compraventa, en el epíteto intitulado "Obligaciones Respecto al Vehículo", que el comprador se obligó a "no utilizar el Vehículo en violación de las leyes, reglamentos u órdenes de cuerpos

gubernamentales que sean aplicables al Vehículo o sus usos".[36] Además, se comprometió "***a no exponer el Vehículo a mal uso o confiscación***, y a no permitir que su valor sea menoscabado". (Énfasis suplido).

De los alegatos, o la prueba que obra en autos, no surge que Otero Cruz haya obtenido la posesión del vehículo de Beltrán Berrios, de manera involuntaria. Según la jurisprudencia reseñada, los derechos de este último persiguen la suerte de los actos de Otero Cruz. Por lo tanto, la responsabilidad del dueño registral del vehículo la compartía vicariamente, en este caso, con Otero Cruz, quien estaba en posesión del vehículo al momento de la confiscación.

Del contrato de compraventa, financiado por la apelada, surge expresa y detalladamente, no solo que Beltrán Berrios debía abstenerse de llevar a cabo actos delictivos con el mismo, ***sino de evitar la confiscación del mismo***. Justipreciamos que la letra del contrato no es general, sino *clara y específica*. La interpretación que nos invita a hacer la apelante nos obligaría a obviar que la cláusula reseñada es la ley entre las partes. Además, ALF, quien tiene un interés económico sobre el vehículo, pero no su posesión física, hizo lo que razonablemente estaba en sus manos para evitar que el auto fuese utilizado ilegalmente – lo plasmó en el contrato que regula la compraventa y las respectivas obligaciones que la misma conlleva.

Luego de una sosegada evaluación del expediente que nos ocupa, de la solicitud de sentencia sumaria de la apelada, y la revisión de *novo* sobre la misma, *lo cual en derecho nos corresponde,* hemos podido constatar que las determinaciones de hechos y derecho realizadas por el TPI-Arecibo en su *"Sentencia"* se sustentan con los documentos presentados por estas. A su vez, entendemos

---

[36] Apéndice del recurso, pág. 68.

que el apelante no pudo controvertir los hechos, expuestos y probados, por la aquí apelada. En mérito de lo antes expuesto, sostenemos el dictamen apelado en toda su extensión.

**IV.**

Por los fundamentos que anteceden, *confirmamos la sentencia apelada.*

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones