TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| POPULAR AUTO, L.L.C.<br><br>Parte Apelada<br><br><br>v.<br><br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO REPRESENTADO POR EL HON. DOMINGO EMANUELLI HERNÁNDEZ, SECRETARIO DE JUSTICIA<br><br>Parte Apelante | TA2025AP00337 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: SA2024CV00201<br><br>Sala:704<br><br>Sobre:<br><br>Impugnación de Confiscación |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 29 de octubre de 2025.

Compareció ante este Tribunal la parte apelante, el Gobierno de Puerto Rico (en adelante, "Gobierno" o "Apelante"), mediante recurso de apelación. Nos solicitó la revocación de la *Sentencia* emitida y notificada el 16 de junio de 2025 por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, "TPI"). Mediante el referido dictamen, el foro apelado declaró "Ha Lugar" la "**Demanda**" presentada por Popular Auto, L.L.C. (en adelante "Popular Auto" o "Apelado").

Por los fundamentos que exponemos a continuación, se *revoca* la *Sentencia* apelada.

## I.

El 10 de mayo de 2024, el Gobierno ocupó y posteriormente confiscó, el vehículo de motor marca Mercedes Benz, Modelo GLB 250 del año 2020, con tablilla núm. JKS-447, amparándose en la Ley Núm. 119-2011, según enmendada, conocida como la "Ley Uniforme de Confiscaciones de 2011", 34 LPRA sec. 1724 *et seq.*, (en adelante, "Ley Núm. 119-2011"). Con mayor especificidad, y según se desprende de la

notificación remitida por la Junta de Confiscaciones del Departamento de Justicia del 17 de mayo de 2024, se indicó que el vehículo se utilizó en violación al Artículo 512 de la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como la "Ley de Sustancias Controladas de Puerto Rico", 24 LPRA sec. 2101 *et seq.* Asimismo, surge de dicha comunicación que, según el Registro de Vehículos de Motor del Departamento de Transportación y Obras Públicas, el mismo aparecía registrado a nombre del Sr. Emanuel Eugenio Rivera Vázquez (en adelante, "señor Rivera Vázquez").

En consecuencia, Popular Auto presentó una *Demanda* con el fin de impugnar la confiscación del vehículo. Adujo que poseía un interés propietario sobre el mismo y afirmó que era un tercero inocente dado a que existía una deuda de $44,507.63, de conformidad con cierto "Contrato de Venta al por Menor a Plazos" (en adelante, "Contrato de Financiamiento"). Además, señaló que el Gobierno estaba impedido de realizar tal confiscación, puesto que, a esa fecha, no se había obtenido convicción alguna contra el alegado ocupante o titular de la unidad.

Por su parte, el Gobierno presentó "**Contestación a Demanda**" en la que invocó como defensa afirmativa la presunción de corrección y legalidad de los procesos de confiscación, con independencia de la existencia de otro caso criminal, administrativo o de cualquier índole. Señaló que en este caso no era aplicable la figura de tercero inocente, toda vez que ésta solo es aplicable en los casos en los que el vehículo haya sido robado o apropiado ilegalmente. Además, aclaró que la naturaleza de la confiscación es *in rem*, por lo cual era independiente del resultado de una acción de naturaleza penal, administrativa o cualquier otra acción relacionada a los mismos hechos.

Así las cosas, el 3 de diciembre de 2024, el tribunal *a quo* dio paso a la celebración de la vista de legitimación activa que ordena el Artículo 15 de la Ley Núm. 119-2011, *supra*, 34 LPRA sec. 17241. Mediante la Certificación de Título emitido por el Departamento de Transportación y Obras Públicas, se demostró que Popular Auto ostentaba un gravamen

preferente sobre el automóvil. Admitida tal documentación, el foro primario consignó en una *Minuta* su determinación de que el Apelado contaba con legitimación activa para incoar la "**Demanda**".

Luego de varios trámites procesales, el 31 de enero de 2025, Popular Auto presentó una "**Solicitud de Sentencia Sumaria**" en la que sostuvo que procedía la disposición sumaria del pleito, toda vez que no existían controversias reales de hechos medulares del caso. En detalle, arguyó que la doctrina del tercero inocente es aplicable al pleito de autos, puesto que el vehículo se financió bajo la condición de que éste no fuera utilizado para fines ilícitos. Alegó, además, que en la Cláusula C del *Contrato de Financiamiento* se advirtió que se debía cumplir con todas las leyes, reglamentos u órdenes que sean aplicables al equipo o sus usos.

Por su parte, el Gobierno presentó su "**Oposición a Moción de Sentencia Sumaria**" mediante la cual argumentó que el Tribunal Supremo de Puerto Rico ha denegado reiteradamente la extensión de esta defensa a las entidades financieras y a compañías aseguradoras. Agregó que el Apelado tenía el peso de la prueba de demostrar que el dueño del vehículo no concedió la posesión del mismo de manera voluntaria, que tomó las medidas cautelares necesarias para prevenir el uso de actividades delictivas o que el infractor se apartó de las instrucciones para su uso. Dado a que el vehículo se encontró desocupado, arguyó que Popular Auto no podía presentar evidencia admisible en cuanto a los requisitos antes mencionados.

Conforme a ello, el TPI emitió una *Resolución* el 25 de febrero de 2025, notificada al próximo día, en la cual denegó la *Solicitud de Sentencia Sumaria*. Resolvió que la cláusula contractual a la cual el Apelado hizo referencia no era lo suficientemente particular como para cumplir con el criterio de especificidad que requiere la doctrina del tercero inocente. Determinó que la misma es tan amplia que no advierte debida y expresamente el acto u omisión que el contrato pretende prohibir y penalizar. Así las cosas, consignó los siguientes hechos incontrovertidos:

1. El 11 de marzo de 2022, el Sr. Emanuel Eugenio Rivera Vázquez otorgó un Contrato de Venta al por Menor a Plazos

("Contrato de Financiamiento") con Popular Auto, mediante el cual financió la compra de la unidad marca Mercedes Benz, modelo GLB250, año 2020, tablilla JKS-447 que realizó en el concesionario Bremen Auto Group en Caguas, Puerto Rico.

2. Mediante el Contrato de Financiamiento, Popular Auto financió la cuantía de $58,425.49 pagadera en un (1) plazo de $1,130.21, sesenta y cuatro (64) plazos de $815.21 y un (1) plazo final de $12,995.00 pagadero el 11 de septiembre de 2027, para un precio total de venta de $73,183.16. Mediante el Contrato de Financiamiento, se estableció un gravamen preferente a favor de Popular Auto sobre el vehículo de motor.

3. El 30 de marzo de 2022, se registró en el Departamento de Transportación y Obras Públicas (DTOP) la Solicitud de Presentación de Gravamen Mobiliario sobre Vehículos de Motor mediante la cual se detalló la información sobre el vehículo de motor y la relación contractual entre el acreedor, Popular Auto y el señor Rivera Vázquez, el deudor.

4. El Certificado de Título emitido por DTOP para el vehículo de motor marca Mercedes Benz, Modelo GLB-250 del año 2020 establece que Popular Auto ostenta un gravamen preferente sobre el mismo.

5. El Contrato de Financiamiento es administrado por Popular Auto y tiene un balance pendiente de pago de $44,506.63 al momento de la presentación de la demanda de impugnación de confiscación en este caso.

6. El 24 de mayo de 2024, la Junta de Confiscaciones del Estado Libre Asociado de Puerto Rico, notificó a Popular Auto la confiscación del vehículo de motor objeto de la controversia.

7. El vehículo objeto de la controversia ostenta un gravamen fue valorado en $23,000 por el Estado Libre Asociado para fines de la Confiscación.

8. Según se hizo constar en la Notificación de la Confiscación, la ocupación del vehículo obedeció a que éste presuntamente se utilizó en violación al Artículo 512 de la Ley de Sustancias Controladas.

9. En este caso, el vehículo se ocupó en un estacionamiento en el Residencial Juan Jiménez García en Caguas. Por lo tanto, se trató de un hallazgo. En ese momento, ni el dueño registral ni un tercero se encontraban en posesión del vehículo confiscado puesto que el mismo no estaba ocupado.

En desacuerdo con la determinación, Popular Auto presentó una "**Moción Reconsideración**" en la que señaló que el dictamen del TPI se alejaba de las interpretaciones judiciales referente a la doctrina del tercero inocente. Añadió que la decisión impone una carga excesivamente onerosa a las entidades financieras.

Conforme a ello, el Gobierno presentó su "**Oposición a Solicitud de Reconsideración**" en la cual reiteró que las cláusulas del contrato

debían ser particulares y específicas, a los fines de evitar el uso ilegal de la propiedad en la comisión de un delito.

Posteriormente, el foro primario emitió una *Orden* en la que declaró "No Ha Lugar" a la *Moción Reconsideración* del Apelado.

Más adelante, el 9 de junio de 2025, se celebró el juicio en su fondo. Consecuentemente, el 16 de junio de 2025, el TPI emitió una *Sentencia* en la que declaró "**Ha Lugar**" la "**Demanda**" presentada. Concluyó que Popular Auto demostró que el *Contrato de Financiamiento* contiene los términos y condiciones dirigidas a establecer la prohibición del uso del vehículo en contravención de las leyes y reglamentos. Siendo así, entendió que se desprenden, de manera clara, las advertencias y prohibiciones establecidas por el Apelado. Por ende, resolvió que Popular Auto cumplió con los requisitos de la figura de tercero inocente.

Insatisfecho, el Gobierno presentó su "**Moción de Reconsideración**", mediante la cual señaló la incongruencia de la *Sentencia* apelada con el dictamen anterior referente a la denegatoria de la *Solicitud de Sentencia Sumaria*. Finalmente, señaló que no se desfiló prueba sobre la redacción del *Contrato de Financiamiento* ni la impartición de las advertencias al dueño del vehículo al momento de su adquisición.

Por su parte, el Apelado presentó su "**Oposición a Moción de Reconsideración**" mediante la que estableció que el foro primario actuó correctamente al determinar que este desconocía sobre las actividades criminales en las que se utilizaba el vehículo, que no consintió al uso de este para fines ilegales y que tampoco participó en los hechos contrarios a la ley. Alegó que, al desconocer sobre los hechos delictivos llevados a cabo, no tenía que tomar medidas cautelares adicionales a las ya pactadas en el *Contrato de Financiamiento*.

A esos efectos, el foro de origen emitió una *Orden* en la cual declaró "**No Ha Lugar**" la *Moción de Reconsideración* del Apelante.

Inconforme con lo anterior, el Gobierno presentó el recurso que nos ocupa, mediante el cual le imputó al TPI la comisión del siguiente error:

> Erró el Tribunal de Primera Instancia al declarar "Ha Lugar" la Demanda de Popular y resolver que el lenguaje general de

las cláusulas y condiciones del Contrato de Compraventa al Por Menor a Plazos del automóvil confiscado bastaba para que Popular pudiese invocar la defensa de tercero inocente ante los hechos que motivaron su confiscación.

El 28 de octubre de 2025, compareció Popular Auto mediante "**Alegato en Oposición a Apelación**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

## A.

En nuestro ordenamiento jurídico, el proceso de confiscación se rige por las disposiciones de la Ley Núm. 119-2011, *supra*. El precitado estatuto establece un procedimiento uniforme para todos los casos de confiscación, y establece como política pública la agilidad del procedimiento, siempre y cuando éstos garanticen los derechos y reclamos de las personas afectadas por ésta.  34 LPRA sec. 1724.  Aunque el estatuto no define el concepto de confiscación, nuestro máximo foro judicial lo ha definido de la siguiente manera:

> La confiscación es el acto mediante el cual el Estado, representado en este caso por el Poder Ejecutivo, priva a una persona de su propiedad sin compensación económica, basado únicamente en que dicha propiedad fue utilizada en la comisión de ciertos delitos predeterminados por la Asamblea Legislativa o porque tal bien es producto o resultado de una conducta prohibida por ley. Mapfre Praico Ins. v. ELA, 195 DPR 86, 91 (2016).

Existen dos tipos de confiscación, *in personam* o *in rem*. En nuestra jurisdicción, la confiscación *in rem* "va dirigid[a] contra la cosa misma y no contra el dueño de la propiedad, su poseedor, encargado o cualquier otra persona con algún interés legal sobre ésta".  López v. Secretaria, 162 DPR 345, 352 (2004). Por ello, si el dueño, poseedor o encargado del vehículo, o la persona con interés legal sobre éste, ha puesto de forma voluntaria dicho vehículo en posesión del infractor o de la persona bajo la cual éste actúa, los derechos de aquellos corren la suerte del uso a que el infractor pueda someter el vehículo. General Accident Insc. Co. v. ELA, 137 DPR 466, 472 (1994).

Debido al carácter civil que permea el proceso, "la culpabilidad o inocencia del acusado no deberá tomarse en cuenta en el proceso de confiscación". 34 LPRA sec. 1724e. En otras palabras, lo determinante no es el resultado de la acción criminal que se ha presentado contra la persona que utilizó la cosa objeto de confiscación, sino si el bien en cuestión fue utilizado en la comisión de un delito. Íd. Siendo así, el Artículo 9 de la Ley Núm. 119-2011 provee que podrá confiscarse "toda propiedad que resulte, sea producto o se utilice, durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación". 34 LPRA sec. 1724f.

A pesar de esto, la jurisprudencia ha desarrollado normas para proteger los derechos de aquellos que tienen un interés económico o propietario en el vehículo confiscado y no han estado directamente involucrados en la actividad criminal que motiva la confiscación. A éstos se les conoce como terceros inocentes. A tenor con ello, el dueño de la propiedad podrá impugnar la confiscación mediante la presentación de una demanda en contra del Estado y el funcionario que autorizó la confiscación. 34 LPRA sec. 1724l. La disposición legal presume la legalidad y corrección de la confiscación independientemente de cualquier otro caso penal, administrativo o que esté relacionado a los mismos hechos. Íd. El demandante tendrá el peso de la prueba para derrotar la presunción de legalidad que le asiste la confiscación. Íd.

Para invocar la doctrina del tercero inocente se debe demostrar que (1) el infractor obtuvo la posesión del vehículo sin el consentimiento del dueño; o (2) que el dueño del vehículo tomó medidas cautelares expresas para prevenir la actividad delictiva y el infractor se apartó sustancialmente de sus instrucciones. First Bank, Univ. Ins. Co. v. ELA., 156 DRR 77, 83-84 (2002); General Accident Ins. Co. v. ELA, 137 DPR 466, 474 (1994). Si se acredita tal condición, entonces es que tanto el dueño como el vendedor condicional o cualquier otro con interés en este son terceros inocentes protegidos contra la confiscación. Íd., pág. 83. De igual manera, nuestro más alto foro reconoció que no existe diferencia entre el dueño del vehículo

y el interés económico de una entidad financiera, ya que están igualmente cobijados por la defensa de tercero inocente. General Accident Ins. Co. v. ELA, *supra*, pág. 473. Finalmente, es importante resaltar que "no toda entrega de la posesión de un vehículo tiene iguales motivaciones, ni idéntica justificación, ni la misma necesidad, ni similares propósitos". Flores Pérez v. ELA, 195 DPR 137, 149 (2016). Por tanto, resulta importante resolver cada caso conforme a la particularidad de los hechos presentados. General Accident Ins. Co. v. ELA, *supra*, pág. 474.

**B.**

Es norma conocida en nuestro ordenamiento jurídico que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Ortiz Ortiz v. Medtronic, 209 DPR 759, 779 (2022). Al respecto, la Regla 42.2 de las Reglas de Procedimiento Civil dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". 32 LPRA Ap. V, R. 42.2.

Es decir, un tribunal apelativo no tiene facultad de sustituir por sus propias apreciaciones las determinaciones del foro de instancia. Serrano v. Auxilio Mutuo, 171 DPR 717, 741 (2007). La razón jurídica detrás de esta normativa se fundamenta en la apreciación que hace el adjudicador de los hechos de la prueba testifical, porque al ser una tarea llena de elementos subjetivos, es él quien está en mejor posición para aquilatarla. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016). El Tribunal de Primera Instancia es el foro que tiene la oportunidad de escuchar el testimonio y apreciar el comportamiento de los testigos. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 771 (2013). Basándose en ello, adjudica la credibilidad que le merecen los testimonios. Así, la declaración directa de un sólo testigo, de ser creída por el juzgador de hechos, es prueba

suficiente de cualquier hecho. <u>SLG Rivera Carrasquillo v. AAA</u>, 177 DPR 341, 357 (2009).

A tenor con lo anterior, se le concede respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos, dado que el foro apelativo cuenta solamente con "récords mudos e inexpresivos". <u>Trinidad v. Chade</u>, *supra*, pág. 291. No obstante, la norma de deferencia judicial tiene límites y no supone una inmunidad absoluta frente a la función de los tribunales revisores. El Tribunal Supremo aclaró en <u>Dávila Nieves v. Meléndez Marín</u>, *supra*, por primera vez, qué constituye que un juez adjudique con pasión, prejuicio o parcialidad, o que su determinación sea un error manifiesto. Allí se concluyó que un juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". <u>Íd</u>., pág. 782.

Por otro lado, se consideran claramente erróneas las conclusiones del foro revisado si de un análisis de la totalidad de la evidencia, el foro apelativo queda convencido de que "se cometió un error, [...] [porque] las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". <u>Íd</u>., pág. 772. En otras palabras, incurre en un error manifiesto cuando "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". <u>Pueblo v. Toro Martínez</u>, 200 DPR 834, 859 (2018).

Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación". <u>Gómez Márquez *et al*. v. El Oriental</u>, 203 DPR 783, 794 (2020). Como es conocido, las diferencias de criterio jurídico no cumplen con el referido estándar de revisión. <u>Íd</u>.

**III.**

En este caso, el Apelante nos solicitó que revoquemos la *Sentencia* del TPI en la que se declaró "**Ha Lugar**" la "**Demanda**" interpuesta por el Apelado. Señaló que el foro primario erró al determinar que el lenguaje general incorporado al *Contrato de Financiamiento* cumplió con los requisitos establecidos para la aplicabilidad de la figura del tercero inocente.

Por su parte, Popular Auto arguyó que la cláusula C del referido acuerdo advierte, de manera satisfactoria, sobre los usos permitidos del vehículo y, por tanto, sostiene que se tomaron las medidas cautelares suficientes para quedar cobijado bajo la doctrina del tercero inocente. A esos fines, la estipulación contractual específicamente dispone que:

> Usted se obliga a conservar el Vehículo en perfecta condición con la excepción de desgaste natural y a cumplir con todas las leyes, reglamentos u órdenes de cuerpos gubernamentales que sean aplicables al equipo o a sus usos.[1]

De entrada, y dentro del análisis que estamos compelidos a efectuar, debemos establecer que no se cumple con el primer requisito ya que obtuvo de manera voluntaria la posesión del vehículo de motor objeto del *Contrato de Financiamiento*. Corresponde, por tanto, evaluar si, a la luz de la prueba presentada y la aludida cláusula contractual en controversia, Popular Auto debió ser considerado tercero inocente para propósitos del proceso de impugnación de la confiscación que nos ocupa. Para ello, y además del texto específico dispuesto en el *Contrato de Financiamiento*, debemos analizar si de la prueba presentada ante el TPI la parte promovente aportó evidencia durante el juicio sobre actos anteriores, concomitantes o posteriores que, en unión a la Cláusula C, pudieran haber guiado a la juzgadora de instancia a concluir distinto a su *Resolución* denegatoria de la solicitud de sentencia sumaria que presentó Popular Auto y entender que este último es un tercero inocente, de conformidad con nuestro estado de derecho.

---

[1] *Véase*, SUMAC TPI, Entrada Núm. 38, Anejo Núm. 1, pág. 2.

Tras un detenido estudio de la prueba presentada ante el TPI, en unión con los documentos que obran en el legajo apelativo, llegamos a la conclusión de que, aparte de la Cláusula C del *Contrato de Financiamiento*, el expediente está huérfano de prueba tendente a establecer que el Apelado tomó medidas cautelares expresas adicionales a lo contenido en el *Contrato de Financiamiento* para prevenir la actividad delictiva y que el señor Rivera Vázquez se apartó sustancialmente de sus instrucciones. Es decir, no se presentó evidencia que estableciera que Popular Auto promovió medidas adicionales a las generalidades que se incorporaron al contrato en controversia ligadas a la posesión o uso del vehículo en cuestión.

Nuestra conclusión se fundamenta en el hecho de que la prueba de los dos (2) testigos presentados por Popular Auto, solo uno de ellos testificó sobre el contenido del *Contrato de Financiamiento* y sus cláusulas. A esos efectos, el Sr. Jorge Juan Vargas Calimano testificó lo siguiente: (1) que el contrato dispone que no se debe utilizar para obrar en contravención de la ley;[2] (2) que la Cláusula C del acuerdo en controversia tiene como propósito que el cliente tenga conocimiento de las prohibiciones;[3] (3) aclaró que no fue la persona que preparó el contrato[4]; (4) que no estuvo presente al momento de la otorgación del *Contrato de Financiamiento*;[5] (5) que no vio al señor Rivera Vázquez firmar el *Contrato de Financiamiento*;[6] (6) que no redactó la Cláusula C del acuerdo;[7] (7) que el *Contrato de Financiamiento* no especifica que no se pueden usar drogas o armas en el vehículo;[8] y (8) declaró que en su opinión las cláusulas son claras.[9]

Es, pues, evidente que la especificidad de las medidas cautelares o instrucciones particulares que nuestro ordenamiento jurídico exige para que se pueda invocar exitosamente la doctrina excepcional del tercero inocente no concurren en el caso de autos. La Cláusula C del *Contrato de*

---

[2] Regrabación del juicio al minuto 00:57:47.
[3] Regrabación del juicio al minuto 00:55:31.
[4] Regrabación del juicio al minuto 00:49:47.
[5] Regrabación del juicio al minuto 00:49:39.
[6] Regrabación del juicio al minuto 00:49:28.
[7] Regrabación del juicio al minuto 00:49:18.
[8] Regrabación del juicio al minuto 00:47:50.
[9] Regrabación del juicio al minuto 00:47:12.

*Financiamiento* es demasiado amplia y general para entender que Popular Auto es tercero inocente para propósitos del caso y en ausencia de prueba presentada en el juicio celebrado que estableciera que el día del otorgamiento del *Contrato de Financiamiento* el Apelado le dio instrucciones particulares y específicas adicionales a las contenidas en el referido contrato al señor Rivera Vázquez, estamos impedidos de coincidir con la apreciación del TPI.

Adviértase que el único testigo de Popular Auto que produjo prueba sobre el otorgamiento del *Contrato de Financiamiento* claramente expresó que no estuvo el día del otorgamiento del Contrato, que no redactó el mismo y que la Cláusula C tuvo como propósito que el señor Rivera Vázquez conociera de las prohibiciones al utilizar el vehículo en controversia. Ninguna prueba se presentó para rebatir el hecho de que la entrega del vehículo fue eminentemente transaccional y que estuvo supeditada al cumplimiento de una instrucción específica sobre un uso no autorizado, sino más bien al pago de un precio en virtud del financiamiento. De hecho, el señor Vargas Calimano fue más allá y expresó que el propósito del *Contrato de Financiamiento* era financiar un vehículo.[10]

Según el derecho anteriormente discutido, para invocar la defensa del tercero inocente el promovente deberá demostrar mediante preponderancia de prueba que: (1) el alegado infractor obtuvo la posesión del vehículo sin el consentimiento del dueño; o (2) que el dueño del vehículo tomó medidas cautelares expresas para precaver actividad delictiva y el infractor se apartó sustancialmente de éstas. Por otro lado, el Tribunal Supremo ha hecho un llamado a analizar los hechos que dan paso a la entrega de la posesión de un vehículo, ya que no todas tienen las mismas motivaciones, justificaciones, propósitos o necesidades.

Resulta importante destacar que, las determinaciones de nuestra más alta curia no establecen que la protección no se extiende a las instituciones financieras, sino que, a la luz de las particularidades de los casos ante la consideración de los tribunales, éstas no han cumplido con

---

[10] Regrabación del juicio al minuto 1:00:26.

los requisitos de la doctrina para ser extensiva la figura. En vista de ello, se ha resuelto que las cláusulas generales no cumplen con la especificidad de advertir al dueño sobre la prohibición del uso del vehículo en actos delictivos.

Reiteramos, tras analizar los documentos que obran en el legajo apelativo, así como la regrabación de los procedimientos durante el juicio celebrado en el caso, concluimos que no se desprende que el Apelado haya puesto al Tribunal en posición de determinar que se hayan tomado las medidas cautelares expresas para prevenir el uso de la propiedad en la comisión de un delito.

Descartada la entrega involuntaria del vehículo, el enfoque debe estar en examinar si se probó que **el dueño del vehículo tomó medidas cautelares expresas para precaver actividad delictiva y si el infractor se apartó sustancialmente de éstas**. De esta forma, se debía establecer que se impartieron instrucciones suficientes para el uso del auto, de tal manera que se pudiera entender que éste tenía intención de prevenir el uso ilícito del mismo. Del expediente no existe constancia de que el dueño registral del vehículo reportara el mismo como robado y tampoco existe evidencia que demuestre instrucción específica alguna referente al uso no permitido.

El petitorio de Popular Auto se basa en que su *Contrato de Financiamiento* es suficiente para cumplir con la exigencia de la doctrina. Analizada la referida cláusula y la prueba admitida durante el juicio, a la luz del derecho vigente, resolvemos que ésta no basta para cumplir con las advertencias requeridas por nuestro ordenamiento que permita que el Apelado es un tercero inocente. Es decir, la generalidad de esta resulta demasiado amplia, por lo que no se puede concluir que provee un apercibimiento sobre el acto que pretende prevenir.

En la decisión más reciente del Tribunal Supremo, Coop. Seg. Mult. PR y Popular Auto, LLC. v. ELA, 2025 TSPR 78, 216 DPR __ (2025), se **analizó la suficiencia de una cláusula muy similar a la aquí en**

**controversia, de conformidad con el derecho vigente**.[11] **Se determinó que la generalidad de dicha cláusula contractual impedía que Popular Auto se amparara en la doctrina del tercero inocente, dado a que no impartía una medida cautelar lo suficientemente específica y particular que evite el uso ilícito del vehículo**. Íd. Añadió que:

> Las presuntas instrucciones o medidas cautelares no pueden evaluarse en abstracción de los hechos particulares que dan margen a la entrega de la posesión del vehículo ni del resto de los requisitos aplicables bajo esta doctrina. Y es que debemos recordar que no toda entrega de vehículo tiene iguales motivaciones, ni idéntica justificación, ni la misma necesidad, ni propósitos similares. Íd.

Dado a que la figura del tercero inocente está ligada a la naturaleza de la posesión o el uso del vehículo, el máximo foro determinó que el motivo detrás de la entrega del vehículo, en el caso del financiamiento, es transaccional y no se supedita al cumplimiento de una instrucción específica. Íd. Por lo que, bajo las circunstancias específicas de ese caso, concluyó que no era de aplicación la doctrina del tercero inocente. Íd.

Sobre este último particular, debemos reiterar que no existe en el expediente evidencia adicional tendente a establecer que la posesión del vehículo por parte del señor Rivera Vázquez estuviera supeditada al cumplimiento de una instrucción específica sobre uso autorizado y más bien, lo único que la aludida prueba estableció fue el pago de un precio por virtud del financiamiento del vehículo por parte de Popular Auto.

Sostenemos que, a pesar de que esta opinión se publicó posterior a la determinación apelada, el análisis de la cláusula hubiera sido el mismo al amparo de lo resuelto en la jurisprudencia anterior a lo resuelto en Coop. Seg. Mult. PR y Popular Auto, LLC. v. ELA, *supra*. Un análisis detenido de la cláusula del *Contrato de Financiamiento* no puede conducir a otra conclusión que no sea que es una muy general, que se distancia de la especificidad que requiere nuestro ordenamiento y que, por tanto, no le es extensiva la figura a Popular Auto, a la luz de los hechos particulares del caso ante nos. Es decir, reiteramos que la advertencia carece de

---

[11] Hacemos la salvedad que, a la fecha en la que el TPI resolvió el caso ante nuestra consideración, esta Opinión no había sido publicada.

especificidad para establecer de manera clara el uso indebido que se pretende prever.

**IV.**

Por las razones antes expresadas, las cuales hacemos formar parte integral del presente dictamen, *revocamos* la *Sentencia* apelada. En consecuencia, se declara "**No Ha Lugar**" la "**Demanda**" incoada por Popular Auto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones